[No. S114399. Aug. 5, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN DIEGO LEAL, Defendant and Appellant.

### Counsel

J. Courtney Shevelson for Defendant and Appellant.

Richard Such and John T. Philipsborn for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Gerald A. Engler, Assistant Attorneys General, John H. Deist and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

### Opinion

**MORENO, J.**— ██ Penal Code section 288, subdivision (b)(1), makes it a felony to commit a lewd act upon a child under the age of 14 years "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . ." Nearly two decades ago, the Court of Appeal defined the term "duress" as used in this statute to include a threat of hardship. (*People v. Pitmon* (1985) 170 Cal.App.3d 38, 49 [216 Cal.Rptr. 221].) The Legislature later incorporated this definition of "duress" into the statute defining rape (former Pen. Code, § 261, subd. (b), added by Stats. 1990, ch. 630, § 1, p. 3097) but in 1993 amended the definition of duress in the rape statute to delete the term "hardship," and incorporated the same definition into the spousal rape statute. (Pen. Code, §§ 261, subd. (b), 262, subd. (c).)

██ For the reasons that follow, we conclude that the 1993 amendments of the rape and spousal rape statutes, to delete the term "hardship" from the definition of "duress" in rape, and incorporate that definition into spousal rape did not alter the previously existing judicial definition of the term "duress" as

used in Penal Code section 288, subdivision (b)(1), which did, and continues to, include a threat of hardship.

FACTS

Defendant Juan Diego Leal was convicted, following a jury trial, of two counts of committing a lewd act on a child under the age of 14 years by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury in violation of Penal Code section 288, subdivision (b)(1). Defendant was sentenced to 12 years in prison.

The evidence adduced at trial showed that between May 1 and December 7, 1999, 11-year-old Jennifer was in the sixth grade and lived with her parents and her nine-year-old brother Eugene. Jennifer and her brother would be alone in the house each weekday afternoon from the time they returned home from school until about 5:00 p.m. when their parents returned home from work.

Defendant was the boyfriend of Jennifer's Aunt Maria. He had a key to Jennifer's house and would often come to work on the house to make repairs, such as installing a doorknob and lock on Jennifer's parents' bedroom door and painting the kitchen. Defendant was supposed to work on the house when the children were in school. If Jennifer spoke to her mother on the telephone, defendant would tell Jennifer to say that he was not there.

Whenever he saw her, defendant would hug Jennifer in a way she did not like. If no one was around, he would touch Jennifer's breasts, either over or under her shirt, and touch her bottom. On numerous occasions, defendant assaulted Jennifer in her mother's bedroom. He either would enter the bedroom when Jennifer was there doing her homework or using the computer, or he would tell her to come into the bedroom, saying he had to talk to her or show her something. Jennifer went into the bedroom with defendant because she was scared. He would close and lock the door and then touch her breasts either through her clothing or under her shirt. He had her lower her pants and touched her buttocks and her vagina. Twice he put his fingers in her vagina. Defendant would take Jennifer's wrist and place her hand on his penis. Jennifer stated that defendant would "just grab my arm or like my wrist and then put it on his private, and then he would just like move it around." When she hesitated, he would grab her and "pull [her] hands back right away," saying: "Come on, it's nothing scary." He would kiss her, sometimes putting his tongue in her mouth. Jennifer testified she "just wanted to get away" from defendant.

Defendant told Jennifer not to tell anyone about these incidents, warning her that if she did she would not be able to see him anymore. Jennifer was

concerned that this would mean that she also would not be able to see her Aunt Maria anymore. Defendant did not hurt her, but Jennifer felt disgusted. She tried to avoid being alone with defendant by locking herself in her mother's bedroom or pretending she was sleeping or sick.

The only person Jennifer told about defendant's conduct was her best friend Jamie. Jamie urged Jennifer to "tell somebody," but Jennifer refused because she was afraid she would be taken away from her parents, as had happened to friends of hers who had been molested, and it scared her to think about that. Upon Jamie's advice that Jennifer had "to get the nerve to say no and start being strong," Jennifer began to say no to defendant and told him not to touch her.

Jennifer and Jamie arranged a signal in an effort to protect Jennifer from defendant. If Jennifer was on the telephone with Jamie and felt scared of defendant, she would make a clicking noise and Jamie would run to Jennifer's house and stay with her. Still, on some occasions when Jamie was present, defendant nevertheless would lock Jamie out of the bedroom and molest Jennifer.[1]

Eventually, word of these incidents reached the mother of one of Jennifer's friends, who called the school counselor who, in turn, called the police.

Defendant testified and denied molesting Jennifer and denied ever having been in the bedroom with her.

The court instructed the jury in accordance with CALJIC No. 10.42 that "[t]he term duress means a direct or implied threat of force, violence, danger, *hardship* or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to 1) perform an act which otherwise would not have been performed or, 2) acquiesce in an act to which one otherwise would not have submitted. The total circumstances including the age of the victim and her relationship to defendant are factors to consider in appraising the existence of duress." (Italics added.)

Defendant appealed his conviction and argued, inter alia, that the trial court erred by defining "duress" to include "a direct or implied threat of 'hardship.' " The Court of Appeal affirmed the judgment of conviction, declining to follow the contrary holding in *People v. Valentine* (2001) 93 Cal.App.4th 1241 [113 Cal.Rptr.2d 748]. We granted review to resolve this conflict.

---

[1] Defendant also was charged with molesting Jamie, but the jury was unable to reach a verdict on these charges.

DISCUSSION

Penal Code section 288, subdivision (b)(1),[2] makes it a felony for any person to commit a lewd act upon a child under the age of 14 years "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." The quoted phrase also appears in the definitions of three other sexual offenses: forcible sodomy in violation of section 286, subdivision (c)(2),[3] forcible oral copulation in violation of section 288a, subdivision (c)(2),[4] and forcible acts of sexual penetration in violation of section 289, subdivision (a)(1).[5]

■ The term "duress" as used in section 288, subdivision (b)(1), was first defined in *People v. Pitmon, supra,* 170 Cal.App.3d 38, 48. The Court of Appeal in *Pitmon* observed: "Duress, as an element of a criminal offense has not been previously given legal definition." (*Id.* at p. 48.) The court in *Pitmon* rejected the argument that it should adopt the definition used for "duress" as a defense to a criminal charge, which "is established only if one acted out of fear of imminent death or great bodily harm," noting that "the purpose served by the concept of 'duress' as a defense is manifestly different from that served by inclusion of the term as an element of a sex offense against minors." (*Id.* at p. 49.) Instead, the court relied in part on the dictionary definition of "duress" and found "duress as used in the context of section 288 to mean a direct or implied threat of force, violence, danger, *hardship* or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." (*Pitmon, supra,* 170 Cal.App.3d at p. 50, italics added.) This definition was incorporated into CALJIC No. 10.42, the jury instruction for section 288, subdivision (b)(1). (Com. to CALJIC No. 10.42 (6th ed. 1996) p. 798.)

The *Pitmon* definition of "duress" has been followed consistently for almost 20 years. (*People v. Cardenas* (1994) 21 Cal.App.4th 927, 939 [26

---

[2] All further undesignated statutory references are to the Penal Code.

[3] Section 286, subdivision (c)(2) states: "Any person who commits an act of sodomy when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."

[4] Section 288a, subdivision (c)(2), states: "Any person who commits an act of oral copulation when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."

[5] Section 289, subdivision (a)(1), states: "Any person who commits an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."

Cal.Rptr.2d 567]; *People v. Wilkerson* (1992) 6 Cal.App.4th 1571, 1578–1579 [8 Cal.Rptr.2d 392]; *People v. Schulz* (1992) 2 Cal.App.4th 999, 1005 [3 Cal.Rptr.2d 799]; *People v. Hecker* (1990) 219 Cal.App.3d 1238, 1250 [268 Cal.Rptr. 884]; *People v. Sanchez* (1989) 208 Cal.App.3d 721, 748 [256 Cal.Rptr. 446].) The *Pitmon* definition also has been used to define the term "duress" as it is used in the sexual offenses of aggravated sexual assault of a child in violation of section 269 (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13 [126 Cal.Rptr.2d 416]), forcible oral copulation in violation of section 288a, subdivision (c) (*People v. Senior* (1992) 3 Cal.App.4th 765, 775 [5 Cal.Rptr.2d 14]; *People v. Bergschneider* (1989) 211 Cal.App.3d 144, 154 [259 Cal.Rptr. 219]), forcible sexual penetration in violation of section 289 (*People v. Senior, supra,* 3 Cal.App.4th at p. 775), and enhancement for prior sex offenses under section 667.6, subdivision (d) (*People v. Senior, supra,* 3 Cal.App.4th at p. 775). The validity of the *Pitmon* definition of "duress" was unquestioned until the Court of Appeal's decision in *People v. Valentine, supra,* 93 Cal.App.4th 1241.

The court in *Valentine* held that the trial court erred in including the threat of hardship in its jury instructions defining the term "duress" for purposes of forcible oral copulation (former § 288a, subd. (c), Stats. 1988, ch. 1243, § 7, p. 4135), forcible sexual penetration (§ 289, subd. (a)), and the imposition of full separate and consecutive terms of imprisonment (§ 667.6, subd. (d)). The Court of Appeal reasoned that the Legislature intended "to exclude 'hardship' from the list of threatened harms" under these statutes when it amended the rape and spousal rape statutes (§§ 261, 262) in 1993. (*People v. Valentine, supra,* 93 Cal.App.4th at p. 1248.) In order to determine if the Court of Appeal was correct, we must first examine the history of the term "duress" as used in the rape and spousal rape statutes.

Before 1990, the crime of rape differed from the sexual crimes discussed above in that it could not be committed by means of duress. Former section 261, subdivision (2), defined rape as sexual intercourse with a person not the spouse of the perpetrator "[w]here it is accomplished against a person's will by means of force, violence, or fear of immediate and unlawful bodily injury on the person or another." (Stats. 1986, ch. 1299, § 1, p. 4592.) In 1989, the Court of Appeal in *People v. Bergschneider, supra,* 211 Cal.App.3d 144, 152, pointed out this anomaly, stating: "For reasons which escape us, rape is the only major sexual assault crime which cannot be committed by means of duress. [Citations.]"

The Legislature quickly responded, amending section 261 in 1990 to renumber former subdivision (2) as subdivision (a)(2) and adding the terms "duress" and "menace" to expand the definition of rape to include acts accomplished "by means of force, violence, duress, menace, or fear of

immediate and unlawful bodily injury on the person or another." (Stats. 1990, ch. 630, § 1, p. 3096.) The Legislature further amended section 261 to include definitions of the terms "duress" and "menace," adopting the same definition of the term "duress" as stated by the court in *Pitmon*: "As used in this section, 'duress' means a direct or implied threat of force, violence, danger, *hardship*, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted. . . ." (Stats. 1990, ch. 630, § 1, p. 3097, italics added.)

The Legislature did not similarly amend former section 262, which at that time defined "spousal rape" as "an act of sexual intercourse accomplished against the will of the spouse by means of force or fear of immediate and unlawful bodily injury on the spouse or another, or where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat. . . ." (Stats. 1983, ch. 1193, § 1, p. 4510.)

In 1993, the Legislature rewrote the spousal rape law to define "spousal rape" in terms similar to the definition of "rape": "Rape of a person who is the spouse of the perpetrator is an act of sexual intercourse accomplished under any of the following circumstances: [¶] (1) Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 262, subd. (a)(1) as amended by Stats. 1993, ch. 595, § 2, p. 3121.) Subdivision (c) of the new spousal rape statute defines the term "duress." (§ 262, subd. (c) as amended by Stats. 1993, ch. 595, § 2, p. 3122.) The Assembly Bill that proposed this legislation, as introduced, adopted verbatim the definition of "duress" in the rape statute, section 261, subdivision (b), which included the term "hardship": "As used in this section, 'duress' means a direct or implied threat of force, violence, danger, *hardship*, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted. . . ." (Assem. Bill No. 187 (1993–1994 Reg. Sess.) § 1, as introduced Jan. 21, 1993, italics added.) The bill was amended in the Senate, however, to remove the term "hardship" from both the spousal rape statute and the rape statute. (Sen. Amend. to Assem. Bill No. 187 (1993–1994 Reg. Sess.) §§ 1, 2, July 14, 1993.) As enacted, therefore, the bill amended the definition of "duress" in the rape statute to delete the term "hardship" and adopted this same definition of "duress" in the rewritten spousal rape statute. (§§ 261, subd. (b), 262, subd. (c).)

Reviewing this legislative history of the rape and spousal rape statutes, the Court of Appeal in *People v. Valentine, supra*, 93 Cal.App.4th 1241, concluded (as noted above) that the Legislature intended "to exclude 'hardship' from the list of threatened harms" in section 288a, subdivision (c) (forcible oral copulation), section 289, subdivision (a) (forcible sexual penetration), and section 667.6, subdivision (d) (enhancement for prior sex offense), when it amended the rape and spousal rape statutes, despite the fact that the Legislature had not amended any of those statutes. (93 Cal.App.4th at p. 1248.) The court reasoned: "It is true the Legislature did not bother to amend section 288a or 289, subdivision a—or any other major sex crime statutes—to incorporate this or any other statutory definition of duress. Yet it appears absurd to interpret the statutory scheme as allowing a threat of hardship to justify a conviction for forcible digital penetration or oral copulation but not for forcible rape or spousal rape." (*Ibid.*)

The Court of Appeal in the present case, interpreting section 288, subdivision (b), rather than the statutes at issue in *Valentine*, disagreed with the reasoning in *Valentine*, stating the court was "not convinced that the fact that the Legislature removed 'hardship' from the definition of 'duress' as to the crime of forcible rape and rewrote the spousal rape statute to include an identical definition reflects the Legislature's intent to delete hardship as a permissible basis for finding duress in any sex crime." We reach the same conclusion. As we will explain, the Legislature clearly stated that its deletion of the term "hardship" from the definition of "duress" applies only to the rape and spousal rape statutes.

Our task in interpreting a statute "is to ascertain and effectuate legislative intent. [Citations.]" (*People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) In order to do so, "[w]e turn first to the words of the statute themselves, recognizing that 'they generally provide the most reliable indicator of legislative intent.' [Citations.] When the language of a statute is 'clear and unambiguous' and thus not reasonably susceptible of more than one meaning, ' " ' "there is no need for construction, and courts should not indulge in it." ' " ' [Citations.]" (*Ibid.*)

▮ The statutory language of the provision defining "duress" in each of the rape statutes is clear and unambiguous. The definition of "duress" in both the rape and spousal rape statutes begins with the phrase, "As used in this section, 'duress' means . . . ." (§§ 261, subd. (b), 262, subd. (c).) This clear language belies any legislative intent to apply the definitions of "duress" in the rape and spousal rape statutes to any other sexual offenses.

Starting from the premise that in 1990 the Legislature incorporated into the rape statute a definition of "duress" that already was in use for other sexual

offenses, defendant argues that the Legislature must have intended its 1993 amendment of the definition of "duress" in the rape statute, and the incorporation of this new definition into the spousal rape statute, to apply as well to other sexual offenses that use the term "duress." Defendant observes: "The legislative history does not suggest any rationale for why the Legislature would want its 1993 amendment of the definition of 'duress' to apply only to rape so that it would have one meaning when the rape statutes use the phrase 'force, violence, duress, menace, or fear of immediate and unlawful bodily injury' but another, much more expansive meaning when the identical phrase is used in the statutes defining sodomy, lewd acts on a child, oral copulation and foreign object rape."

But the Legislature was not required to set forth its reasons for providing a different definition of "duress" for rape and spousal rape than has been used in other sexual offenses; it is clear that it did so. "When ' "statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." ' [Citations.] The plain meaning of words in a statute may be disregarded only when that meaning is ' "repugnant to the general purview of the act," or for some other compelling reason . . . .' [Citations.]" (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) As we said in an analogous situation: "It is our task to construe, not to amend, the statute. 'In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted . . . .' [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].)

The Legislature clearly confined the definition of "duress" in the rape and spousal rape statutes to apply in those sections. Had the Legislature intended for this definition to apply as well to other sexual offenses, it could easily have said so.

Nor do we have a compelling reason to disregard the plain meaning of the statutes and apply the definition of "duress" in the rape and spousal rape statutes to the crime at issue here, committing a lewd act on a child under the age of 14 years, in violation of section 288, subdivision (b)(1). The Legislature might well have wished to apply a somewhat broader definition of "duress" in cases involving sexual abuse of a child under the age of 14 years. The Legislature may have wished to protect children against lewd acts committed by threats of hardship despite its determination that similar threats of hardship should not provide the basis for the crime of rape or spousal rape against an adult.

As noted above, the Court of Appeal in *People v. Pitmon, supra,* 170 Cal.App.3d 38, established the definition of "duress" that has been consistently used and has been incorporated in the standard jury instruction for section 288, subdivision (b)(1). (CALJIC No. 10.42.) *Pitmon* first held that "duress" as used in section 288, subdivision (b)(1), does not carry the same meaning as "duress" as a defense to a criminal charge. The defense of duress derives from the language of section 26, which provides, in pertinent part, that "[a]ll persons are capable of committing crimes except . . . [¶] . . . . [¶] . . . Persons (unless the crime be punishable with death) who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused." The *Pitmon* court correctly recognized that duress as an element of section 288, subdivision (b)(1), is not similarly based upon section 26 and, therefore, does not require a showing that the victim believed his or her life would be endangered. The court stated: "First, the purpose served by the concept of 'duress' as a defense is manifestly different from that served by inclusion of the term as an element of a sex offense against minors. In section 26, the Legislature has allowed only the most serious kinds of duress to constitute a defense in order to prevent lesser forms of duress from excusing dangerous criminal conduct. No similar purpose appears from inclusion of 'duress' in subdivision (b) of section 288, a statute designed in part to punish the obtaining of a child's participation in a lewd act in violation of the child's will. [Citation.]" (*People v. Pitmon, supra,* 170 Cal.App.3d 38, 49.) We agree that duress as a defense to a criminal charge carries a different meaning than "duress" as used in section 288, subdivision (b)(1).

In order to define "duress" for purposes of section 288, subdivision (b)(1), the court in *Pitmon* recognized that "courts are bound to give effect to statutes according to the usual, ordinary import of the language used" (*People v. Pitmon, supra,* 170 Cal.App.3d 38, 50, citing *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]), and consulted Webster's Third New International Dictionary, which currently includes the following definition of duress: "restraint or check by force . . . stringent compulsion by threat of danger, *hardship,* or retribution . . . ." (Webster's 3d New Internat. Dict. (2002) p. 703, italics added.) We agree. "Courts frequently consult dictionaries to determine the usual meaning of words." (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 16 [99 Cal.Rptr.2d 252, 5 P.3d 815].)

Amicus curiae California Attorneys for Criminal Justice argues that including "hardship" in the definition of "duress" would make "duress" overly vague. But the long application of the *Pitmon* definition has not demonstrated this to be the case. Only one published decision has applied the term "hardship" in this context and no issue was raised that the term was vague. In

*People v. Bergschneider, supra,* 211 Cal.App.3d 144, the defendant forced his 14-year-old, "slightly mentally retarded" (*id.* at p. 150) stepdaughter to have sex with him, in part by threatening to put her "on restriction" if she refused, which meant to the victim that "she couldn't go anywhere or spend the night with anyone." (*Id.* at p. 150, fn. 3.) The Court of Appeal held: "The threatened restriction constitutes 'hardship or retribution' within the meaning of *Pitmon.* It was for the jury to determine whether a reasonable adolescent in [the victim's] position would have been coerced." (*Id.* at p. 154.)

For the reasons set forth above, we disapprove the decision in *People v. Valentine, supra,* 93 Cal.App.4th 1241, to the extent it is inconsistent with the views expressed in this opinion and affirm the judgment of the Court of Appeal in the present case.

Disposition

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

**KENNARD, J.,** Dissenting.—Unlike the majority, I would hold that the term "duress" in Penal Code section 288, subdivision (b)(1)[1] does not include a threat to inflict "hardship." The structure and purpose of the Penal Code provisions defining sexual crimes, viewed in the light of principles of statutory construction, support this conclusion.

Section 288, subdivision (b)(1), makes it a felony to commit a lewd act upon a child under the age of 14 years "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury . . . ." The quoted phrase also appears in the definitions of three other sexual offenses: forcible sodomy in violation of section 286, subdivision (c)(2),[2] forcible oral copulation in violation of section 288a, subdivision (c)(2),[3] and forcible acts of sexual penetration in violation of section 289, subdivision (a)(1).[4] None of these statutes defines the term "duress."

---

[1] All further statutory citations are to the Penal Code.

[2] Section 286, subdivision (c)(2) states: "Any person who commits an act of sodomy when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."

[3] Section 288a, subdivision (c)(2) provides: "Any person who commits an act of oral copulation when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."

[4] Section 289, subdivision (a)(1) states: "Any person who commits an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person shall be punished by imprisonment in the state prison for three, six, or eight years."

Twenty years ago, the Court of Appeal in *People v. Pitmon* (1985) 170 Cal.App.3d 38 [216 Cal.Rptr. 221] (*Pitmon*) turned to a dictionary to define the term "duress" in section 288. Choosing from alternative definitions, *Pitmon* held that "duress" means "a direct or implied threat of force, violence, danger, *hardship*, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or (2) to acquiesce in an act to which one otherwise would not have submitted." (*Id.* at p. 50, paraphrasing Webster's 3d New Internat. Dict. (1961) p. 703, italics added.)

When in 1990 the Legislature set out to define "duress" in the rape statute (§ 261), it codified the *Pitmon* definition. (Stats. 1990, ch. 630, § 1, p. 3097.) That legislation expressly limited its definition of "duress" to section 261.

Three years later, in 1993, the Legislature reversed course. It amended the meaning of "duress" in section 261, the rape statute, to *delete* the reference to "hardship." The statutory definition of duress now reads: "As used in this section, 'duress' means a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted. The total circumstances, including the age of the victim, and his or her relationship to the defendant, are factors to consider in appraising the existence of duress." (§ 261, subd. (b).) The 1993 Legislature also enacted a spousal rape statute with the just-quoted definition of "duress," definition that does not include the threat of hardship. (See § 262, subd. (c).)

Thus, the statutory landscape today shows two statutes (§ 261, subd. (b) and § 262, subd. (c)) that exclude "hardship" from the definition of "duress" four statutes (§§ 286, 288, 288a, and 289) that contain no definition of "duress," and *no* statute that includes "hardship" in a definition of "duress."

In light of this background, the term "duress" in all these statutes should be construed by applying the principle of statutory construction that "[i]dentical language appearing in separate provisions dealing with the same subject matter should be accorded the same interpretation." (*Walker v. Superior Court* (1988) 47 Cal.3d 112, 132 [253 Cal.Rptr. 1, 763 P.2d 852]; see *People v. Contreras* (1997) 55 Cal.App.4th 760, 764 [64 Cal.Rptr.2d 233].) This leads to the conclusion that courts should adopt the definition of "duress" in sections 261 and 262, the only statutes to define that term, as the definition of "duress" in other statutes proscribing sexual crimes.

Such a uniform interpretation will minimize the risk of confusing juries. Under the majority's view, the definition of "duress" for rape and spousal rape *does not* include a threat to inflict hardship, but the definition of "duress" for child abuse, sodomy, oral copulation, or sexual penetration *does* include a threat of hardship. Hence, when a defendant is charged with rape and other sexual crimes, the trial court would have to instruct the jury on the statutory definition of "duress" for the rape charge, a definition that does not include a threat of hardship; for the other sexual crimes, however, the court would have to give the jury a different definition of "duress," one that does include the threat of hardship. Also, a single act—sexual intercourse with a child under 14—could violate both sections 261 (rape) and 288 (child molestation), requiring the jury to apply two inconsistent definitions of duress to the same conduct.

A finding of duress is not essential to make an act of child molestation criminal. Subdivision (a) of section 288 prohibits all lewd acts upon a child under the age of 14 years, with no requirement that the act be committed by such means as force or duress. Section 288, subdivision (b)(1), permits more severe punishment for certain aggravated acts of lewd conduct on a child under the age of 14 years—those committed by force, violence, duress, menace, or fear. Thus, a conviction under that section triggers the provisions of statutes such as section 1203.066, subdivision (a)(1), which renders the defendant ineligible for probation; section 667.6, subdivisions (c) and (d), which permit the trial court to impose full-term consecutive sentences under certain circumstances; and section 667.61, which provides a sentence of 25 years to life if the defendant later has a conviction for specified offenses. Each of these statutes applies the same consequences to convictions for the other sexual assaults that can be committed by means of duress: rape, spousal rape, forcible oral copulation, forcible sodomy, and forcible acts of sexual penetration. Therefore, the term "duress" as used in all of these statutes should be given the same meaning, regardless of whether the offense is committed against an adult or a minor.

The distinctions between section 288, subdivision (a) (lewd act on child under 14) and subdivision (b) (lewd act accomplished by force, violence, duress, menace, or fear) and the harsher punishment permitted by the latter provision show that the Legislature did not intend a standard under which practically all sexual touchings of a child may fall under subdivision (b). A definition of duress that includes the threat to inflict hardship, however, will have such an effect. "Hardship" is a vague and amorphous concept. It has been defined as "suffering" or "privation" (Webster's 3d New Internat. Dict. (2002) p. 1033), a "lack of comfort" (Random House Webster's Unabridged Dict. (2d ed. 2001) p. 872), and "difficulty or suffering caused by a lack of something, especially money" (Encarta World English Dict. (1999) p. 816). A threat to withhold a child's promised allowance might well fall within these definitions, as would innumerable other threats.

As noted earlier, in 1985 the Court of Appeal in *Pitmon, supra*, 170 Cal.App.3d 38, defined the term "duress" in section 288 as including a threat of hardship, a definition that has been followed in most later Court of Appeal cases. The majority here asserts that the "long application of the *Pitmon* definition has not demonstrated" that the concept of "hardship" is overly vague, because in the two decades since *Pitmon* was decided no published decision has considered the issue of the term's vagueness. (Maj. opn., *ante*, at p. 1009.) But published decisions are a tiny fraction of section 288 prosecutions; thus, the majority overlooks the impact the *Pitmon* definition of duress may have on guilty pleas and plea bargaining. Because the concept of hardship is so vague, almost every instance of a lewd act under section 288 could be viewed as a lewd act accomplished by duress, and therefore punishable under section 288, subdivision (b). The threat of prosecution and more severe punishment under subdivision (b) would put pressure on a defendant to plead guilty to a violation of subdivision (a) or some lesser sexual crime.

The Attorney General insists that hardship should be included in the definition of "duress" for purposes of section 288, subdivision (b)(1), because "minors in the main are almost always far more vulnerable to hardship than adults." But the Legislature, although recognizing the vulnerability of minors, did not include the threat of hardship in its definition of "duress." Instead, it defined "duress" as "a direct or implied threat of force, violence, danger or retribution" and provided that "the total circumstances, *including the age of the victim, and his or her relationship to the defendant*, are factors to consider in appraising the existence of duress." (§ 261, subd. (b), italics added.) The italicized language shows: (1) The Legislature intended its definition of duress to apply to crimes against minors as well as crimes against adults, and (2) it implicitly rejected the notion that including hardship in the definition of duress was essential to protect minors.

I can discern no reason why "duress" should be defined differently for sodomy, oral copulation, or sexual penetration than for rape or spousal rape. The majority asserts that the Legislature is not required to set forth a reason for defining "duress" differently for rape and spousal rape than for other sexual crimes. But if neither the majority nor the Legislature can articulate a reason to distinguish rape from other sex crimes, the more likely explanation is that the Legislature never intended such a distinction.

Mindful of our duty to harmonize the statutory scheme as a whole (see *People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441]), I would interpret the term "duress" in section 288 to conform to the statutory definition of that term in sections 261, subdivision (b), and 262, subdivision (c) a definition that does not include the threat of hardship. I would therefore reverse the Court of Appeal and remand the case to that court to determine whether the trial court's error in instructing on the meaning of "duress" in section 288 was prejudicial.