Filed 2/7/25  P. v. Towner CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082736 |
| v. | (Super.Ct.No. INF2100349) |
| WILLIAM SPIVEY TOWNER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  James S. Hawkins, Judge.  Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Namita Patel, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted William Ray Spivey Towner of committing numerous sexual offenses against two of his minor nephews. On appeal, he challenges the sufficiency of the evidence that he committed five of the offenses by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury. We affirm.

BACKGROUND

Towner was born in March 1998. He is five feet eight inches tall and weighs 140 pounds. He is the maternal uncle of John Doe 1 and John Doe 2, who are first cousins. Doe 1 was born in May 2011, and Doe 2 was born in February 2007. Doe 1 and Doe 2 were close and told each other everything. Doe 1 has a brother who is two years younger.

In March 2022, Towner was charged by information with one count of oral copulation of a person 10 years old or younger (Pen. Code, §§ 288.7, 289; count 1 [Doe 1]), three counts of forcible lewd and lascivious conduct with a child under the age of 14 (Pen. Code, § 288, subd. (b)(1) (§ 288(b)(1)); count 2 [Doe 1] & counts 5-6 [Doe 2]), and two counts of forcible oral copulation of a child under the age of 14 (Pen. Code, § 269, subd. (a)(4) (§ 269(a)(4)); counts 3-4 [Doe 2]). (Unlabeled statutory references are to the Penal Code.) The information also alleged that Towner fell under the one strike law (§ 667.61) because he committed the lewd and lascivious conduct offenses against more than one victim (*id.*, subds. (e)(4), (j)(2)).

2

Doe 1 and Doe 2 were 12 and 16 years old, respectively, when they testified at trial. Doe 1 explained that he used to be close to Towner, whom Doe 1 loved and described as his favorite uncle. According to Doe 1's mother, Towner often babysat Doe 1 and his brother when Doe 1 was seven years old. Doe 1's mother was a single parent who worked as many shifts as she could, and Towner was the primary babysitter. Doe 1 viewed Towner as an authority figure and "somebody who would tell [Doe 1] what to do."

Doe 1 testified that Towner twice touched him inappropriately. The first incident occurred when Doe 1 was seven years old. Doe 1 and his family lived in an apartment that had one room and a bathroom. The room contained a bed for Doe 1's mother and a bunkbed for Doe 1 and his brother. Once while Towner was at the apartment alone with Doe 1 and his brother, Doe 1 and Towner were lying together in the bottom portion of the bunkbed watching a movie while Doe 1's brother slept in the mother's bed. Towner started rubbing Doe 1's legs and moved his hands toward Doe 1's penis. Towner placed his hand inside of Doe 1's pants and underneath his underwear and touched Doe 1's penis for a short period. Doe 1 felt "scared" when Towner touched him and did not want to be touched.

Towner stopped touching Doe 1 when Doe 1 said that he had to urinate. After Towner stopped touching Doe 1, Towner told Doe 1 not to tell anyone. Doe 1 went to the bathroom and then to his mother's bed because he did not want Towner to touch him again.

3

When Doe 1's mother arrived home, Doe 1 told her what happened. She got mad and yelled at Towner, which caused Doe 1 to feel sad because he loved Towner. Doe 1's mother filed a police report, but she said that nothing happened as a result. Doe 1's mother subsequently started to disbelieve Doe 1's account because Doe 1 did not act like he hated Towner.

The second incident occurred when Doe 1 was eight or nine years old. Towner had moved in with Doe 1's family, and they lived at a different residence, where Towner shared a bedroom with Doe 1 and his brother. Towner frequently babysat Doe 1 and his brother. One night, Doe 1's mother took his brother to the hospital and left Doe 1 home alone with his stepfather and Towner. Doe 1 went to his bedroom to sleep and found himself alone in the bedroom with Towner. Doe 1 wrapped a blanket around himself "like a burrito" in an attempt to prevent Towner from touching him again. Towner told Doe 1 that he could watch television if Doe 1 let Towner touch him. Doe 1 acquiesced because he "just wanted to get it over with." Towner pulled the blanket off of Doe 1, pulled off Doe 1's pants and underwear, rubbed Doe 1's penis, and sucked and licked Doe 1's penis. Towner stopped when he received a telephone call. Towner again told Doe 1 not to tell anyone what happened.

Months later, in March 2021, Doe 1 told his mother about the second incident in the context of telling her that he wanted to stay at his grandmother's house. Doe 1 ultimately disclosed what happened because he worried that Towner would touch him again, but he hesitated to tell his mother about the second incident because he did not

4

want Towner to get in trouble again. Doe 1's mother called Towner, who denied doing anything to Doe 1. She then called law enforcement and also told her mother. Law enforcement interviewed Doe 1's mother and had a forensic psychologist interview Doe 1. During his forensic interview, Doe 1 revealed that Doe 2 might be another victim of Towner's.

Doe 2 testified about seven specific incidents of inappropriate touching by Towner when Doe 2 was between the ages of 10 and 12. Doe 2 also testified that Towner touched him "a little bit" and "a few times" when Doe 2 was six or seven years old. Doe 2 described those incidents as "little dabs" that did not involve any sustained touching of his penis.

Towner often babysat Doe 2, and Doe 2 confirmed that Towner was the "adult of the house" when no other adults were present. One night when Doe 2 was 10 years old, Towner slept over at Doe 2's house in a separate bed in Doe 2's bedroom.[1] Doe 2 was asleep in his own bed when he awoke to find Towner's hand touching and rubbing Doe 2's penis over his clothing. Towner was lying on the floor next to Doe 2's bed. Doe 2 pretended to be asleep but twitched, causing him to move slightly, which prompted Towner to instruct Doe 2 not to tell anyone what happened. Doe 2 believed that direction applied to every subsequent incident in which Towner touched him.

The second incident occurred when Doe 2 and Towner were alone one night at the apartment of another of Doe 2's uncles. Doe 2 fell asleep in his other uncle's bedroom

---

[1] Doe 2 also testified that the first incident occurred when he was 11 or 12 years old.

5

while playing a video game.  Doe 2 awoke to find Towner rubbing his penis over his clothes for about six minutes.  Doe 2 fell back asleep after Towner stopped.

The third incident occurred when Doe 2 was 10 or 11 years old and play fighting or "roughhousing" with some of his cousins, including Doe 1, at an aunt's house. Towner punched Doe 2 "too hard" in the stomach, which scared Doe 2, so he ran into the bathroom.  Towner followed Doe 2 into the bathroom and touched Doe 2's penis "a little bit" over his clothing.  Towner stopped touching Doe 2 because one of Doe 2's cousins (maybe Doe 1) punched Towner in the back.  Towner and Doe 2 returned to playing with the other cousins.

Earlier that day, Doe 1 had told Doe 2 that Towner "was touching him" and that he did not know what to do about it.[2]  Doe 2 disclosed that Towner was touching him too. The cousins devised a plan to assist one another if Towner started to touch either of them. Doe 1 said that he and Doe 2 spoke more than once about Towner touching them.  Before telling Doe 1 about Towner touching him, Doe 2 had not told anyone else.  He loved Towner and did not want him to go to jail.  Doe 2 also did not tell anyone else because he was afraid.

Doe 2 described a fourth incident that occurred at Doe 2's house while Towner was staying overnight.  Doe 2 fell asleep in the bottom half of a bunkbed with Towner asleep on the floor next to the bed.  Doe 2 awoke to find Towner stroking his penis, which lasted for approximately seven minutes.  Doe 2 could not recall whether Towner

---

[2]  Doe 2 also testified that Doe 1 first told Doe 2 about Towner touching him at one of the boys' residences.

6

stroked his penis over or underneath Doe 2's clothing. Doe 2 froze and did not know what to do. When Towner stopped stroking Doe 2's penis, Doe 2 went to the bathroom, locked the door, and stayed there until the morning to prevent Towner from touching him again.

A fifth incident occurred when Doe 2 was 10 years old. Doe 2 and Towner were alone together at another uncle's apartment. Doe 2 was playing a video game, and Towner asked Doe 2 to follow him to the bathroom. Towner closed the bathroom door, and Doe 2 sucked Towner's penis for a couple of minutes. Doe 2 could not recall how Towner introduced the idea of Doe 2 sucking his penis, but Doe 2 said that it was Towner's idea. Doe 2 did not want to do it, but Towner did not force him. Doe 2 believed that if he refused, then "something could happen." Doe 2 was "scared a little bit." Towner told Doe 2 to jump in the shower and close the curtain and hide if anyone knocked on the door, which Doe 2 understood to mean that he should not tell anyone about what happened.

Doe 2 said that during a sixth incident, which took place when Doe 2 was between 10 and 12 years old, Towner orally copulated Doe 2. Doe 2 was in his bedroom, and Towner told him to go into the bathroom. Towner took off his clothes, and Doe 2 got on his knees and started sucking on Towner's penis. Towner suggested that he should suck Doe 2's penis, and Doe 2 agreed, even though it is not what he wanted. Doe 2 stood up and took off his pants, and Towner got on his knees and sucked Doe 2's penis. Doe 2 said they should stop, and they did. Doe 2 said that Towner did not force him to do

7

anything that day but confirmed that he had not wanted to do anything with Towner. Doe 2 said that he feared Towner.

During a seventh incident, Towner offered Doe 2 a ride home when Doe 2 was walking home from a liquor store. Towner rubbed Doe 2 over his pants for a couple of minutes while they drove home.

During closing argument, the prosecutor told the jury that the lewd and lascivious conduct count involving Doe 1 (count 2) was based on the first time that Towner touched Doe 1. With respect to the lewd and lascivious conduct counts involving Doe 2 (counts 5 & 6), the prosecutor told the jury that they could convict Towner of those offenses on the basis of any of the incidents of Towner touching Doe 2 (other than two incidents involving oral copulation), as long as the jury all agreed on the two incidents forming the bases of those convictions. The trial court gave the jury a unanimity instruction (CALCRIM No. 3500), instructing the jurors that they had to agree on the acts committed to convict Towner.

The jury convicted Towner on all counts and found true the multiple victims allegation under the one strike law. The trial court sentenced Towner to an aggregate term of 120 years to life.

DISCUSSION

Towner contends that there is insufficient evidence that he accomplished the forcible lewd and lascivious conduct offenses (counts 2, 5, & 6) against Doe 1 and Doe 2 and the forcible oral copulation offenses (counts 3 & 4) against Doe 2 by use of force,

8

violence, duress, menace, or fear of immediate and unlawful bodily injury. We disagree. The record contains substantial evidence that all of those offenses were committed by means of duress.[3]

Section 288(b)(1) prohibits the commission of a lewd or lascivious act on a child under age 14 with the intent to arouse or satisfy the sexual desires of the perpetrator or the child "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." Section 269(a)(4) prohibits aggravated sexual assault of a child under age 14 by oral copulation accomplished by the same means. (§§ 269(a)(4), 287, subd. (c)(2)(B).)

As used in both statutes, "duress" "means '"a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted."'" (*People v. Soto* (2011) 51 Cal.4th 229, 246 (*Soto*), italics omitted, quoting *People v. Leal* (2004) 33 Cal.4th 999, 1004; *People v. Barton* (2020) 56 Cal.App.5th 496, 517-518.) Whether the defendant used "duress is measured by a purely objective standard," so "a jury could find that the defendant used threats or intimidation to commit a lewd act without resolving how the victim subjectively perceived or responded to this

---

**3** "In reviewing a sufficiency of the evidence claim, our role is limited. We review the entire record to determine whether it discloses reasonable and credible evidence to allow a rational trier of fact to determine guilt beyond a reasonable doubt." (*People v. Cardenas* (2020) 53 Cal.App.5th 102, 119, fn. 11.) "We draw all reasonable inferences in favor of the judgment." (*Ibid.*) "Matters of credibility of witnesses and the weight of the evidence are '""the exclusive province""' of the trier of fact." (*Ibid.*)

behavior." (*Soto*, at p. 246.) The relevant focus is "on the defendant's wrongful act, not the victim's response to it." (*Ibid.*) It is irrelevant "how the victim subjectively perceived or responded to [the] behavior." (*Ibid.*) In addition, "consent is not a defense when the victim of a sex crime is a child under age 14." (*Id.* at p. 247.)

"The very nature of duress is psychological coercion." (*People v. Cochran* (2002) 103 Cal.App.4th 8, 15 (*Cochran*), overruled on another ground in *Soto*, *supra*, 55 Cal.4th at p. 248, fn. 12; *People v. Torres* (2024) 107 Cal.App.5th 513, 535.) In determining whether an offense was accomplished by duress, the trier of fact must consider the totality of the circumstances, including the victim's age, relationship to the defendant, and relative size in relation to the defendant. (*People v. Martinez* (2024) 105 Cal.App.5th 178, 189 (*Martinez*); *People v. Schulz* (1992) 2 Cal.App.4th 999, 1005 (*Schulz*).) "Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family." (*Cochran*, at pp. 14-16.) Nevertheless, "[t]he fact that the victim testifies the defendant did not use force or threats does not require a finding of no duress; the victim's testimony must be considered in light of her [or his] age and her [or his] relationship to the defendant." (*Id.* at p. 14.) "A simple warning to a child not to report a molestation reasonably implies the child should not otherwise protest or resist the sexual imposition." (*People v. Senior* (1992) 3 Cal.App.4th 765, 775 (*Senior*).)

10

The record contains substantial evidence that Towner accomplished the lewd and lascivious conduct offense (count 2) against Doe 1—the first time that Towner touched Doe 1's penis—by duress. When the incident occurred, Doe was seven years old, and Towner was approximately 20 years old. The jury could reasonably infer that there was a size disparity between Towner, who weighed 140 pounds, and Doe 1, who was seven years old. In addition, Towner frequently babysat Doe 1, and Doe 1 loved Towner and viewed him as an authority figure who was authorized to tell Doe 1 what to do. The jury could reasonably infer that Doe 1's young age and Towner's relationship to Doe 1 as an authority figure showed that Towner accomplished the lewd act against Doe 1 by duress. After Towner touched Doe 1's penis, Towner immediately told Doe 1 not to tell anyone about what happened. Moreover, the first incident occurred when Towner was alone with Doe 1 and his younger brother in a single apartment, where no other adults were present, and Doe 1 felt afraid when Towner was touching him. The jury could reasonably infer that Towner's isolation of Doe 1 in a particularly vulnerable situation along with the age and size disparity between Doe 1 and Towner and Towner's position of authority over Doe 1 show that Towner committed the offense by means of duress. (*Martinez*, *supra*, 105 Cal.App.5th at p. 189; *Schulz*, *supra*, 2 Cal.App.4th at p. 1005; *Cochran*, *supra*, 103 Cal.App.4th at pp. 14-16.) Moreover, the jury could reasonably infer that Doe 1 actually felt threatened by Towner's actions given that Doe 1 felt fearful when Towner was touching him. (*People v. Veale* (2008) 160 Cal.App.4th 40, 47 (*Veale*).) A jury could also reasonably infer that a reasonable person in Doe 1's

11

circumstances would have felt threatened when Towner told Doe 1 not to tell anyone about the touching, even though that command was not followed by an explicit threat of consequences if Doe 1 did tell. (*Senior*, *supra*, 3 Cal.App.4th at p. 775.) The totality of circumstances supports a jury finding that Towner committed the forcible lewd and lascivious conduct offense against Doe 1 (count 2) by means of duress.

Substantial evidence likewise shows that Towner accomplished the forcible lewd and lascivious conduct offenses (counts 5 & 6) and the forcible oral copulation offenses (counts 3 & 4) against Doe 2 by means of duress. As with Doe 1, there was an age disparity between Doe 2 and Towner from which the jury could infer that there was also a size disparity. Towner was nine years older than Doe 2 and a beloved uncle who frequently babysat Doe 2 and whom Doe 2 viewed as an adult authority figure. Towner started touching Doe 2 when he was six or seven years old. The first time that Towner touched Doe 2's penis, when Doe 2 was 10 years old, Towner instructed Doe 2 not to tell anyone what happened. Doe 2 believed that admonishment applied universally to every time that Towner molested him, and subsequently Doe 2 even complied with Towner's direction to orally copulate him because Doe 2 worried that "something could happen" if he did not. The jury could reasonably infer that a reasonable person in Doe 2's circumstances would have interpreted Towner's direction not to tell anyone as an implicit threat. The jury also could reasonably infer that a reasonable person in Doe 2's circumstances would have consequently felt threatened and complied with Towner's sexual acts for that reason. (*Cochran*, *supra*, 103 Cal.App.4th at pp. 15-16; *Veale*, *supra*,

12

160 Cal.App.4th at p. 47; *Senior*, *supra*, 3 Cal.App.4th at p. 775)  Moreover, Doe 2 expressed that he was afraid of Towner, and the jury could reasonably infer that the fear was substantiated by Towner's use of excessive force against Doe 2 when he was play fighting with Doe 2 and his cousins.  Again, the totality of the circumstances supports a determination that Towner used duress in committing the lewd and lascivious conduct offenses (counts 5 & 6) and the forcible oral copulation offenses (counts 3 & 4) against Doe 2.

Towner relies on *People v. Espinoza* (2002) 95 Cal.App.4th 1287 (*Espinoza*) to support a contrary conclusion concerning all five offenses.  *Espinoza* concluded that there was insufficient evidence of duress based only on the size and age disparity of the victim and the defendant (a 12-year-old girl and her biological father) and the victim's fear of the defendant that was based on nothing more than that the father "continue[d] to molest her."  (*Id.* at p. 1321.)  *Espinoza* is factually distinguishable.[4]  Unlike in *Espinoza*, Towner explicitly directed both Doe 1 and Doe 2 not to tell anyone about the abuse, which the jury could reasonably infer operated as an implicit threat that "the child should not otherwise protest or resist the sexual imposition."  (*Senior*, *supra*, 3 Cal.App.4th at p. 775.)  There is no evidence that the defendant in *Espinoza* gave any similar direction to

---

[4]      *Espinoza*'s persuasive force is also limited because the opinion's analysis is primarily based on a statement in *People v. Hecker* (1990) 219 Cal.App.3d 1238, 1250 that "'[p]sychological coercion' without more does not establish duress."  (*Espinoza*, *supra*, 95 Cal.App.4th at p. 1321, quoting *Hecker*, at p. 1250.)  In *Cochran*, the same court that decided *Hecker* later found the statement in *Hecker* "overly broad" and clarified that the "very nature of duress is psychological coercion."  (*Cochran*, *supra*, 103 Cal.App.4th at p. 15.)  In *Veale*, we recognized *Cochran*'s limitation of *Hecker*.  (*Veale*, *supra*, 160 Cal.App.4th at p. 48.)

his daughter.  (*Espinoza*, at pp. 1292-1295.)  Towner's reliance on *Espinoza* is accordingly misplaced.

For the foregoing reasons, we conclude that the record contains substantial evidence that Towner committed the forcible lewd and lascivious conduct offenses (counts 2, 5 & 6) and the forcible oral copulation offenses (counts 3 & 4) by means of duress.  Because we conclude that there is substantial evidence of duress, we need not address whether Towner used force, fear, or menace in committing the offenses. (*Martinez*, *supra*, 105 Cal.App.5th at p. 189, fn. 7; *Cochran*, *supra*, 103 Cal.App.4th at p. 16.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
　　　　　　　　　　　　　　　　　　　　　　　J.

We concur:

CODRINGTON
　　　　Acting P. J.

RAPHAEL
　　　　J.

14