Filed 5/5/25  P. v. Diaz CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>PABLO NICHOLAS DIAZ,<br><br>　　　Defendant and Appellant. | A169858<br><br>(Contra Costa County<br>Super. Ct. No. 012201651) |

　　　A jury convicted Pablo Nicholas Diaz of 28 sex crimes against a child. On appeal, he primarily contends there was insufficient evidence he committed the offenses by means of duress.  We affirm but remand for the trial court to correct the abstract of judgment.

## BACKGROUND

　　　In October 2022, the prosecutor charged Diaz with 28 crimes for sexually abusing Jane Doe.  They included three counts of aggravated sexual assault of a child by oral copulation (counts 1, 9, & 16), sexual penetration of a child under 14 (count 2), 18 counts of forcible lewd acts upon a child (counts 3-8, 10-15, 17-22), four counts of lewd acts upon a child (counts 23-26), forcible oral copulation of a minor over 14 (count 27), and sexual battery by restraint (count 28).  (Pen. Code, §§ 269, subd. (a)(4), 289, subd. (a)(1)(B), 288, subds. (b)(1), (c)(1), 287, subd. (c)(2)(C), 243.4, subd. (a); undesignated statutory references are to this code.)

1

Diaz and Doe's mother started dating when Doe was seven or eight. He and Doe got along well, and he was kind to her. He took her out a lot, including to parks and restaurants. When Doe was nine or 10, she, her mother, her younger sister, and Diaz moved into an apartment together. Doe and her younger sister shared a bedroom, and she often slept in Doe's bed because Doe was afraid of the dark. Diaz acted as a father figure, and Doe thought of him as her father. She trusted him. Over time, he became more affectionate — hugging, touching, and kissing her. He also began sleeping with her when she was afraid of the dark.

When Doe turned 11, Diaz started molesting her when he slept in her bed. The first time she remembers, she was sleeping in his arms when he grabbed her hand, put it in his pajama pants, and on his penis. She did not know what to do and pretended to be asleep. The abuse continued — he sexually touched her or made her sexually touch him over 100 times from when she was 11 to 13. He touched her breasts, forced her hand onto his penis about 50 times, and orally copulated her at least 100 times before she turned 14. He also removed her clothing and rubbed his bare penis between her legs, on her vagina, on her butt, and her mouth over 100 times before she turned 14. When she was 13, he tried to insert his finger into her vagina, but she jolted away in pain. Another night, he rubbed his penis on her lips and put semen on her lips and inside her mouth. She inexplicably woke up without her pants around 50 times.

Diaz entered Doe's bedroom five nights a week until she was about 14. He had a routine — he took off her pants, orally copulated her, and then brushed his teeth. Her little sister was often in the bed, and Doe let him abuse her to protect her sister. Doe often stayed awake to make sure nothing happened to her sister.

2

Doe tried to stop Diaz. She wore bras, long shirts, and double knotted the drawstring on her long pajamas to prevent him from touching her, but he still did so. She locked her bedroom door and blocked it with furniture, but he still got in. When she laid down in a position that made it harder for him to touch her, he treated her poorly or argued more with her mother the next day. She was too scared to tell anyone, and she let the abuse happen because she did not want to cause any problems or be the reason anything happened. He was bigger and stronger than her, and she became scared when he entered her room.

Diaz continued to abuse Doe after she turned 14. He orally copulated her over 100 times. He continued to put her hand on his penis. He touched her bare breasts, and he rubbed his penis on her vagina and bottom at least 10 times while she was 14 and 15. When she was 17, he took off her clothes, orally copulated her, dragged her to the edge of the bed, and rubbed his penis around her vagina. He orally copulated her other times when she was 17 and 18.

Diaz also abused Doe during the day and outside her bedroom. When she was 13, he pressed his body and penis against her bottom while she was in the living room, touched her breasts, and held her from behind while he "grind[ed]" against her. At least 100 times, she laid on her stomach while he straddled her, rubbed against her, and touched her vagina. He grabbed her behind the head and put his tongue in her mouth in the hallway around five times. The daytime incidents scared her because she was used to his abuse at night and did not know how to react during the day.

Between the ages of 11 and 18, Diaz abused Doe so pervasively it became normal to her. She expected it and no longer felt fear. Once she moved out of the house, she told her aunts, and then her mother.

At trial, an expert explained how abusers groom children and their communities to facilitate their abuse. First, they groom the community by acting as upstanding citizens. Once they get the community to trust them, they target partners who have children. Once the family knows and loves them, they start spending more time with the child. After they gain access to the child, they begin escalating their touching until the child becomes used to the abuse. For his part, Diaz testified he viewed Doe as a daughter.

In December 2023, the jury found Diaz guilty of three counts of aggravated sexual assault of a child by oral copulation, forcible sexual penetration of a child, 18 counts of forcible lewd acts upon a child, four counts of lewd acts upon a child aged 14 or 15, forcible oral copulation of a minor over 14 years of age, and sexual battery. (§§ 269, subd. (a)(4), 289, subd. (a)(1)(B), 288, subds. (b)(1), (c)(1), 287, subd. (c)(2)(C), 243.4, subd. (e).) In January 2024, the trial court sentenced him to a 154-year determinate term consecutive to 45 years to life in prison.

## DISCUSSION

Diaz argues insufficient evidence supports his convictions requiring duress — namely, every conviction except those for non-forcible lewd acts upon a child and sexual battery. We disagree.

The challenged convictions require use "of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (§§ 288, subd. (b)(1), 269, subd. (a)(4), 289, subd. (a)(1)(B), 287, subd. (c)(2)(C); *People v. Leal* (2004) 33 Cal.4th 999, 1004.) Duress — as used in these sections — means " 'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or,

4

(2) acquiesce in an act to which one otherwise would not have submitted.' " (*Leal*, at pp. 1004, 1007, italics omitted.)

"The very nature of duress is psychological coercion." (*People v. Cochran* (2002) 103 Cal.App.4th 8, 15.) It is measured objectively and is not dependent on a victim's response. (*People v. Soto* (2011) 51 Cal.4th 229, 246.) "The fact that the victim testifies the defendant did not use force or threats does not preclude a finding of duress." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072.) "Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes." (*People v. Senior* (1992) 3 Cal.App.4th 765, 775.) " 'Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' is relevant to the existence of duress." (*Ibid.*)

We evaluate Diaz's claim for substantial evidence. (*People v. Maciel* (2013) 57 Cal.4th 482, 514–515.) We "review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "Reversal . . . is unwarranted unless it appears 'that upon no hypotheses whatever is there sufficient substantial evidence to support' " the conviction. (*Ibid.*)

Substantial evidence supports the jury's verdict. (*People v. Cochran, supra*, 103 Cal.App.4th at p. 16, fn. 6 [duress is present in "all but the rarest cases" when victim is young and molested by father in family home].) Doe trusted Diaz as a father, and he viewed her as a daughter. (*Ibid.*; *People v. Senior, supra*, 3 Cal.App.4th at p. 775.) He constructed a trusting relationship and began abusing her. (*Senior*, at p. 775 [relationship between

5

defendant and victim relevant].) He abused her continuously for almost a decade and was bigger and stronger than her. (*Ibid.* [continuing exploitation, position of dominance, and size relevant to duress].) Diaz does not contest these facts; they alone are sufficient to support a finding of duress. (*Cochran*, at p. 16, fn. 6.) Contrary to Diaz's arguments, Doe's testimony — that the abuse was so pervasive that she came to expect it, no longer feared Diaz, and accepted the abuse so nothing would happen to the family — does not negate duress. (*People v. Soto*, *supra*, 51 Cal.4th at p. 246 [duress an objective inquiry]; *People v. Thomas*, *supra*, 15 Cal.App.5th at p. 1072 [finding not dependent on victim's testimony].) In any event, she also testified she was scared when he entered her room at night, and that she let him abuse her to protect her little sister.

Next, the parties agree we should order the trial court to correct item 8 in the abstract of judgment to delete references to the "Three Strikes" sentencing laws — sections 667, subdivisions (b) to (i) and 1170.12. We likewise agree and order the trial court to do so. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

## DISPOSITION

We remand to the trial court for it to amend the abstract of judgment by deleting references to sections 667, subdivisions (b) to (i) and 1170.12, and to mark the box indicating count 3 is "concurrent." In all other respects, the judgment is affirmed.

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
FUJISAKI, J.

A169858; *People v. Diaz*