Filed 6/17/14  P. v. Torres CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B246363 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA124164) |
| v. | |
| RAYMOND TORRES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert J. Higa, Judge.  Reversed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Dana M. Ali and Toni R. Johns Estaville, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Raymond Torres was convicted after a jury trial of two counts of committing forcible lewd acts on a child under 14 years of age, two counts of forcible penetration with a foreign object and one count of forcible oral copulation. The victim was Torres's stepdaughter, Gabrielle. Torres contends there is insufficient evidence he used force to commit any of the offenses and, even if there was, Gabrielle's general testimony about the sexual abuse was insufficient to support convictions for more than one count each of forcible lewd conduct and forcible penetration. We agree there is insufficient evidence Torres used force to commit the lewd acts, reverse the convictions on those two counts and direct the trial court to enter judgment finding Torres guilty of two counts of the lesser included offense of committing a lewd act on a child under 14. Torres's convictions on the other three counts are affirmed, and the matter is remanded for resentencing consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

Torres was charged by information with committing multiple sexual offenses against his daughter Krystal as well as Gabrielle. With respect to Krystal, Torres was charged with three counts of forcible sexual penetration with a foreign object (Pen. Code, § 289, subd. (a)(1)(A)) (counts 1, 2 and 3);[1] and one count of forcible rape (§ 261, subd. (a)(2)) (count 4). As to Gabrielle, he was charged with three counts of committing lewd acts by force on a child under 14 (§ 288, subd. (b)(1)) (counts 5, 6 and 12); two counts of forcible rape (§ 261, subd. (a)(2)) (counts 7 and 8); two counts of forcible sexual penetration with a foreign object (§ 289, subd. (a)(1)(A)) (counts 9 and 10); and one count of forcible oral copulation (§ 288a, subd. (c)(2)) (count 11). It was specially alleged there were multiple victims within the meaning of the "One Strike Law." (§ 667.61, subds. (b), (e).)

Torres pleaded not guilty and denied the special allegation.

---

[1]     Statutory references are to the Penal Code.

2. *The Evidence at Trial*

　　a. *Gabrielle's testimony*

Twenty-one years old at the time of trial, Gabrielle testified Torres became part of her family when she was two years old. She considered Torres her father and described him as a "good dad." When Gabrielle was nine years old, Krystal, who was 15 or 16 and had been living with her mother, moved into the home Gabrielle shared with Torres, her mother, sister and brother on Gard Avenue in Norwalk. After Krystal moved in, according to Gabrielle, everything changed: Torres became "angry and just weird" although Krystal was the target of the brunt of his anger. Torres also began touching Gabrielle over her clothing in a "more aggressive, more touching-type" way while they were playing, which they did "all the time." Gabrielle explained, "[I]t would be like a tickling-type play, if I was laying down he would touch in between my legs, tickle inside of your thigh but it would go from the inside of my thigh up . . . to touch . . . my vagina." When this occurred, Gabrielle would move Torres's hand and stop playing.

When Gabrielle was 12 years old the family, except Krystal, moved into a one-bedroom apartment on Imperial Highway in Norwalk. Torres would watch Gabrielle and her siblings, both of whom are autistic, during the day while their mother worked. After the move Torres and Gabrielle's relationship changed. Torres became possessive. If the two were out alone, Torres would put his arm around Gabrielle and say, "[P]eople are jealous saying that they want you. I got you." One night Gabrielle, who slept on the couch in the living room, was asleep on her stomach when Torres pulled down her pants and touched her buttocks. As he was moving his hand toward her vagina, Gabrielle, who was feigning sleep, moved. Torres jumped back, but then continued touching her. As Gabrielle kept her legs closed, Torres touched as much of her vagina as he could reach.

After this incident Torres sexually abused Gabrielle after she had gone to sleep "once or so a week" for the year and a half they lived on Imperial Highway. Torres's actions varied although Gabrielle always pretended she was repositioning herself in her sleep to minimize the contact. Sometimes Torres kissed her, pushed his penis against her buttocks and vagina or put his fingers between her vaginal lips. Once he put his penis

3

inside her vagina; on another occasion he put his mouth on it. Often Torres touched her on evenings after they had fought during the day—physically or just verbally, with Torres cursing at her—because Torres was upset there was a "male presence" around her. When Gabrielle babysat certain children, Torres would tell Gabrielle's mother Gabrielle was sleeping with the father. Gabrielle explained, "He would always accuse me of some type of sexual act or something like that. Always telling me that I'm wearing clothes to provoke people, or I'm—I'm trying to have sex with this person or the people that I'm on the phone with, I'm trying to have sex with." This confused Gabrielle, whose mother would "separate us and tell him . . . to calm down, and me to calm down, and to be a bigger person. She's like, you know, he gets in his moods."

Gabrielle explained she would lie on the couch in shock while Torres was touching her. She did not tell him to stop because she "didn't really know how to approach the situation, because that was my dad. . . . [W]ho do you go to when you argue [with] this person and somebody's telling you to be the bigger person, like, you can't expect somebody to believe that somebody would do that to somebody."

When Gabrielle was 13 years old, the family moved to St. Louis. Torres continued to sexually abuse her until he moved out two years later. Although there is conflicting testimony whether Gabrielle told Krystal about the abuse, Gabrielle did talk about it with a counselor she began seeing in St. Louis. She also wrote about the abuse in her journal, but threw the journal away when she was 18 years old as a "letting it go type thing." The first time she talked to law enforcement was in 2012 after Krystal reported her own sexual abuse by Torres to the authorities.

b. *Krystal's testimony*

Krystal was seven or eight years old when she, her mother and her sister moved out of the home they shared with Torres in San Bernardino. Krystal remembered Torres had touched her vagina over her clothes while he was tickling her, which made her uncomfortable, before they moved.

Krystal had limited contact with Torres until she was 15 years old when she moved away from her mother and into the apartment on Gard Avenue. Krystal and

4

Torres argued frequently, and Torres was mean to her. Torres also began touching her at night while she was sleeping in bed with Gabrielle. Torres pulled down Krystal's pants and rubbed in between her vaginal lips. He would sometimes masturbate, and once ejaculated in her hair. She also testified on one occasion he penetrated her with his penis, causing her to bleed. Although Krystal saw a doctor the next day, she did not tell her stepmother or the doctor what had happened because she was afraid Torres might harm someone in the family. (During the time Torres lived with Krystal's mother in San Bernardino, he used to hit Krystal as well as her mother and sister.) Torres kicked Krystal out of the house after she graduated from high school. Krystal finally reported the sexual abuse to law enforcement in 2010 because she needed closure and "couldn't live with [herself] knowing that [Torres] worked at a school."

After the People rested, one of the counts of forcible rape of Gabrielle (count 8) was dismissed for insufficient evidence. (§ 1118.1.)

3. *The Verdict and Sentencing*

As to Krystal, the jury found Torres not guilty of forcible rape (count 4) and was unable to reach a verdict on the three counts of forcible penetration with a foreign object (counts 1, 2 and 3). With respect to Gabrielle, the jury found Torres guilty of two counts of committing forcible lewd acts on a child under 14 occurring between January 28, 1999 and January 28, 2000 (counts 5 and 6),[2] two counts of forcible penetration with a foreign object occurring between January 28, 2003 and January 28, 2004 (counts 9 and 10) and one count of forcible oral copulation occurring between January 28, 2003 and January 28, 2004 (count 11). The jury was unable to reach a verdict on one of the counts of forcible lewd conduct (count 12) and the forcible rape charge (count 7). The jury found not true the multiple victim allegation.

---

2   Although the information alleged count 6 was committed between January 28, 2002 and January 28, 2003, the court told the jury the date range for the offense was the same as that for count 5—between January 28, 1999 and January 28, 2000—and the verdict forms reflected that date range.

After hearing a victim impact statement from Krystal but not Gabrielle, who was not emotionally able to make one, and considering the probation report, the trial court sentenced Torres to an aggregate state prison term of 36 years, comprised of consecutive terms of eight years each for counts 5 and 6 (the upper term),[3] eight years for count 9 (the middle term) and six years each for counts 9 and 10 (the middle term). The court dismissed counts 1, 2, and 3 in furtherance of justice (§ 1385) because the jury was split 11 to one for acquittal. The People dismissed counts 7 and 12.

## DISCUSSION

### 1. *Standard of Review*

To assess a claim of insufficient evidence in a criminal case, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's

---

[3] Section 288, subdivision (b)(1), was amended effective September 9, 2010 to increase the punishment for committing a forcible lewd act on a child under 14 to five, eight or 10 years. (See Stats. 2010, ch. 219, § 7.) Eight years was the upper term when Torres committed the offense in 1999.

verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; accord, *People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

> 2. *Substantial Evidence Supports Torres's Convictions for Forcible Penetration with a Foreign Object and Forcible Oral Copulation; There Is Insufficient Evidence He Used Duress To Commit Lewd Acts on Gabrielle*
>
> a. *Governing law*

Section 288, subdivision (a), proscribes committing lewd acts upon a child under the age of 14 years.[4] If the lewd act is committed by use of force or duress, it is an aggravated form of the offense punished under subdivision (b)(1) of section 288. The use of force or duress also aggravates the offenses of oral copulation (§ 288a, subd. (c)(2)) and sexual penetration with a foreign object (§ 289, subd. (a)(1)(A)).

Force used in this context means physical force that is "'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.'" (*People v. Soto* (2011) 51 Cal.4th 229, 242; accord, *People v. Griffin* (2004) 33 Cal.4th 1015, 1027.) Duress means a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to either perform an act that otherwise would not have been performed or to acquiesce in an act to which one otherwise would not have submitted. (See *People v. Leal* (2004) 33 Cal.4th 999, 1004.) Circumstances including the age of the child and his or her relationship to the defendant should be considered. (See *People v. Soto*, *supra*, 51 Cal.4th at p. 246 & fn. 9); see also CALCRIM Nos. 1015 [oral copulation], 1045 [sexual penetration], 1111 [lewd or lascivious act on child under 14 years of age].)[5] "[D]uress is measured by a

---

4    The elements of the offense are a person touched the body of a child; the child was under 14 years of age; and the touching was done with the specific intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of that person or the child. (§ 288, subd. (a); see also CALCRIM No. 1110; CALJIC No. 10.41.)

5    The court instructed the jury with CALJIC Nos. 10.10, 10.30 and 10.42, the predecessors to CALCRIM Nos. 1015, 1045 and 1111. The jury was also instructed with CALJIC No. 10.41 that committing a lewd act on a child under 14 years is a lesser included offense of the aggravated crime.

purely objective standard"; it is "not dependent on the response exhibited by a particular victim." (*Soto*, at p. 246.)

      b. *Forcible penetration with a foreign object and forcible oral copulation when Gabrielle was 12 to 13 years old*

Torres contends there was no evidence he used duress when he sexually violated Gabrielle during the year and one half they lived in the apartment on Imperial Highway—for example, that he struck her, directly or indirectly threatened her, physically controlled her or did anything to overcome her resistance, or warned her she would jeopardize the family if she reported the abuse. Evidence Torres hit Gabrielle or used physical force greater than that necessary to accomplish his crimes was not required to convict Torres of the aggravated offenses. Such conduct would qualify as "force." The People's theory in this case was that Torres accomplished his crimes by use of duress, which includes not only a direct or implied threat of physical harm, but also threat of hardship or retribution. (See *People v. Leal*, *supra*, 33 Cal.4th at pp. 1008-1010 [duress includes threat of hardship]; see also CALJIC No. 10.30 [sexual penetration must be "accomplished against a victim's will by means of duress, *or* fear of immediate and unlawful bodily injury"] (italics added).)

Gabrielle's testimony describing Torres's treatment of her and the circumstances under which the family lived in their home on Imperial Highway constituted substantial evidence supporting a finding of an implied threat of hardship sufficient to coerce a reasonable 12 year old to acquiesce to Torres's weekly acts of sexual abuse. Torres, whom Gabrielle considered a father, was responsible for "watch[ing] the family," including Gabrielle's two autistic siblings, while her mother was at work. Before they moved to Imperial Highway, Gabrielle and Torres had gotten along well although Gabrielle saw him act with irrational anger toward Krystal, which confused her. Once they moved, however, Torres began acting like a jealous boyfriend toward Gabrielle, accusing her of trying to sexually provoke men. They fought both physically and verbally, with Torres cursing at her, often triggered when Gabrielle was around other men, including the fathers of children she babysat. When Gabrielle's mother witnessed

8

the fights, she would tell Gabrielle—the 12 year old—to be the bigger person because of Torres's "moods," a reaction that inhibited her from telling Torres to stop. It was often on evenings after daytime fights had occurred that Torres sexually abused Gabrielle.

Because "the focus must be on the defendant's wrongful act, not the victim's response to it," (*People v. Soto*, *supra*, 51 Cal.4th at p. 246), Gabrielle was not required to testify Torres's actions caused her to be fearful or directly caused her to acquiesce to his evening sexual advances. (See *People v. Cochran* (2002) 103 Cal.App.4th 8, 14 ["fact that the victim testified the defendant did not use force or threats does not require a finding of no duress; the victim's testimony must be considered in light of her age and her relationship to the defendant"].) Measured by the requisite objective standard, the jury was justified in finding Torres's behavior created a pervasive and coercive climate of duress that did not abate simply because the day had turned into evening.

c. *Lewd conduct when Gabrielle was nine years old*

Although the evidence is at least minimally sufficient to sustain the jury's finding Torres used duress to abuse Gabrielle during the time she was 12 or 13 years old, there is no corresponding evidence of duress when Gabrielle was nine years old and Torres touched her vagina during the tickling game he played, notwithstanding the power imbalance between young Gabrielle and the man she considered her father. (See *People v. Hecker* (1990) 219 Cap.App.3d 1238, 1251 [while recognizing that "all sex crimes with children are inherently coercive[,]" the Legislature has determined "that defendants who compound their commission of such acts by the use of violence or threats of violence should be singled out for more particularized deterrence"]; accord, *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1321.) To be sure, Torres became "angry and just weird" after Krystal moved in, but his anger was primarily directed at Krystal. Gabrielle got along with him, and they played "all the time." When Torres touched Gabrielle's vagina during the tickling game, she stopped playing and "the game was over." Indeed, Gabrielle was not even certain for some time that he had done anything wrong. She testified, "It would just be, you know, oh, ha ha, you're playing, you're playing, and all of a sudden something happens and you touch me, or it was never something that I really

9

thought was—not bad, I'm not saying I condoned it at the same time, but it was always like maybe I'm not, maybe I'm over-thinking it, or maybe it was something else." She also testified, "it didn't make me feel comfortable."

No doubt, Torres committed a lewd act when he touched Gabrielle's vagina, whether she understood it at the time or not: At some level there were moments she must have realized this kind of tickling was wrong because she would stop playing. Although the lewd act was committed as soon as Torres touched Gabrielle's vagina with the intent to arouse himself, as the jury necessarily found, she did not acquiesce to the act as a result of Torres's use of force or duress as required for a finding of the aggravated form of the offense. Consequently, we direct the trial court to reverse Torres's convictions on counts 5 and 6 and enter a conviction on two counts of the lesser included offense of committing a lewd act on a child under 14 years of age. (See § 1181, subd. 6 ["[w]hen the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial"]; see also § 1260 ["court may . . . modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense"].)[6]

---

[6]     Torres also contends the trial court committed prejudicial sentencing error when it allowed Krystal to present a victim impact statement even though the jury had found Torres not guilty of, or could not reach a verdict on, the charges involving her; relied on an outdated probation report; and imposed a $240 restitution fine when the minimum fine applicable at the time of the offenses was $200. We need not address these issues because we remand the matter for resentencing. On remand the court is directed to order a supplemental probation report (see Cal. Rules of Court, rule 4.411(c) ["court must order a supplemental probation officer's report in preparation for sentencing proceedings that occur a significant period of time after the original report was prepared"]; Advisory Com. com., 23 pt. 1B West's Ann. Codes, Rules (2006 ed.) foll. Rule 4.411(c), pp. 235-236 ["[s]ubdivision (c) is based on case law that generally requires a supplemental report if the defendant is to be resentenced a significant time after the original sentencing, as, for example, after a remand by an appellate court, or after the apprehension of a defendant who failed to appear at sentencing"]; conduct a sentencing hearing that excludes consideration of Krystal's victim impact statement; and assess a restitution fine in

3. *Substantial Evidence Supports Torres's Convictions on Two Counts of Committing Lewd Acts upon a Child and Two Counts of Forcible Penetration with a Foreign Object*

Young victims of "resident child molester[s]," that is parents or other people living in the home who commit multiple sexual offenses, "may have no practical way of recollecting, reconstructing or identifying by 'specific incidents or dates' all or even any such incidents." (*People v. Jones* (1990) 51 Cal.3d 294, 305 (*Jones*).) Consequently, to balance the defendant's "legitimate due process rights" (*id*. at p. 313) with the need to ensure "the resident child molester is not immunized from substantial criminal liability merely because he has repeatedly molested his victim over an extended period of time" (*id.* at p. 305), "nonspecific or 'generic'" testimony may constitute sufficient evidence of multiple sexual offenses if certain criteria are met: "The victim, must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g. lewd conduct, intercourse, oral copulation or sodomy)[;] . . . the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping')[; and] . . . *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us') to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Id.* at p. 316.)

accordance with former section 1202.4, subd., (b)(1), in effect at the time Torres committed the offenses. (See *People v. Klatt* (2014) 225 Cal.App.4th 906, 921 ["Under the version of the statute applicable at the time of his offenses, the statutory minimum restitution fine for a felony conviction was $200. (Former § 1202.4, subd. (b)(1) as amended by Stats. 1994, 1st Ex. Sess. 1994-1995, ch. 46, § 4, p. 8755.) (Former § 1202.4, subd. (b)(1), Stats. 1994, ch. 46, § 4.) The Legislature later raised the minimum amount to $240, starting January 1, 2012. (§ 1202.4, subd. (b)(1), Stats. 2011, ch. 358, § 1.)"].)

Conceding that touching Gabrielle's vagina while he was tickling her was a lewd act, Torres contends there was insufficient evidence he did it more than once (counts 5 and 6). He argues Gabrielle merely stated they repeatedly played the tickle game, not that he touched her vagina during the game more than once. (See *People v. Davis* (2013) 57 Cal.4th 353, 360 [factual finding must be inference drawn from evidence not mere speculation as to probabilities without evidence].) Torres's portrayal of Gabrielle's testimony is distorted. Read in context, it is clear Gabrielle testified Torres touched her vagina on more than one occasion during the tickle game. After explaining Torres would stop touching her vagina if she moved away, the prosecutor asked, "How often would that happen when you were age nine?" Gabrielle responded, "Whenever we were at the house . . . just playing. We would play all the time. Like I said, I got along with him and we were close, and we would always just play around with each other. I couldn't give you an exact amount of times, but it was like a progression, a slow progression." Indeed, based on Gabrielle's testimony, the People showed great restraint in charging Torres with only two counts of committing a lewd act during that period.

Similarly without merit is Torres's argument there was insufficient evidence of two counts of forcible penetration with a foreign object when Gabrielle was 12 or 13 years old (counts 9 and 10). Gabrielle testified Torres sexually abused her about once a week during the year and a half they lived in the apartment on Imperial Highway. Although she described each incident as "different"—sometimes he would put his fingers inside her vaginal lips or kiss her or rub his penis against her buttocks—her testimony was sufficient to support the inference he penetrated her with his finger on at least two occasions during this period of weekly sexual abuse.[7] After the prosecutor asked Gabrielle to describe Torres's "use of fingers on your vagina," the following exchange occurred from which it is clear Gabrielle was describing multiple incidents:

---

[7]     Sexual penetration with a foreign object includes penetration of the labia majora with a finger. (See *People v. Quintana* (2001) 89 Cal.App.4th 1362, 1366, 1371; § 289, subd. (k)(1), (2).)

12

"A:  [H]e would come into the room and, you know, touch on me.  And then he would try to put his finger like that but then I would move.  I would always move, because I noticed that it would, you know, make him jump up.  But sometimes he wouldn't; he'd like move a little bit, but then he'd—like his hand would stay there . . . . It didn't make sense to me because I was asleep, but it was my way of—

"Q:  Now, I see when you said sleep you put your fingers up in the air like air quotes.  Were you pretending to be asleep?

"A:  I could never go to sleep.

[¶] . . . [¶]

"Q:  How far would he get with his fingers?

"A:  In between—he would go in between the—I guess the lips and the vaginal opening."

That Torres penetrated her vaginal lips with his fingers more than once is further supported by the immediately following testimony during which Gabrielle volunteered Torres had orally copulated her only once.  The prosecutor asked, "Did he ever use his mouth on you?"  Gabrielle replied, "My pants would be down and he'd push my butt up, and like my legs like this, and then he would put his mouth on me.  He only did that one time though."

Considered in toto Gabrielle's testimony was sufficient to meet the standard promulgated by the *Jones* Court for finding Torres guilty of at least two counts of sexual penetration with a foreign object.  Gabrielle described the type of conduct involved (penetration with his finger), its frequency (on some occasions during the year and one-half course of weekly incidents) and the fact such conduct occurred during the limitations period (when she was between 12 and 13 years old).  "Nothing more is required to establish the substantiality of the victim's testimony in child molestation cases." (*Jones*, *supra*, 51 Cal.3d at p. 316; cf. *People v. Matute* (2002) 103 Cal.App.4th 1437, 1447, 1449 [victim's testimony her father "continuously forced sexual intercourse on her from the time she was 12 until she was 16, until he was arrested"—up to several times a week—was sufficient to support 15 counts of forcible rape, a number of counts

13

prosecutor described as "rather conservative . . . [o]ne count for each month that [J.M. suffered rapes at the hands of . . . her father"].)

## DISPOSITION

The judgment is reversed with respect to the convictions on counts 5 and 6, and the court directed to enter a guilty verdict on two counts of the lesser included offense of committing a lewd act on a child under 14.  The other convictions are affirmed.  The matter is remanded for resentencing, including assessment of the restitution fine.


PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.