Filed 4/2/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049135 |
| v. | (Super. Ct. No. 04SF0872) |
| MARCELO VIRGEN GUZMAN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Richard M. King, Judge. Affirmed.

Frank Opsino, Public Defender, Sharon Petrosino, Chief Deputy Public Defender, Mark S. Brown, Assistant Public Defender, and Jacob DeGrave, Deputy Public Defender, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Gerald A. Engler, Chief Assistant Attorneys General, Julie L. Garland, Assistant Attorney General, Barry Carlton, Charles C. Ragland and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　\*　　　\*

INTRODUCTION

Defendant Marcelo Virgen Guzman appeals from the trial court's denial of his petition to recall his prison sentence under the Three Strikes Reform Act of 2012, added by Proposition 36. The principal question in this case is whether the definition of the phrase "'unreasonable risk of danger to public safety,'" set forth in Penal Code section 1170.18, subdivision (c), contained in the recently passed Safe Neighborhoods and Schools Act, added by Proposition 47, applies to petitions brought under Proposition 36.[1] We hold the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c) of Proposition 47 does not apply to a petition under Proposition 36. Our holding is consistent with the Court of Appeal, First Appellate District, Division Two's opinion in *People v. Davis* (2015) 234 Cal.App.4th 1001, 1006 (*Davis*), in which the appellate court similarly held, "the Proposition 47 definition was not intended by the voters to displace the broader definition of the Three Strikes Reform Act already in use."

We also hold the trial court did not abuse its discretion by denying the petition brought under Proposition 36. Based upon its review of the record and in the exercise of its discretion, the court found Guzman's release would present an unreasonable risk of danger to public safety within the meaning of section 1170.126.

BACKGROUND

In 2006, a jury found Guzman guilty of one count each of felony receipt of stolen property in violation of section 496, subdivision (a), and misdemeanor possession

---

[1] The California Supreme Court has granted review of this and related issues in *People v. Valencia,* review granted February 18, 2015, S223825, *People v. Chaney*, review granted February 18, 2015, S223676, and *People v. Aparicio*, review granted March 25, 2015, S224317.

All statutory references are to the Penal Code. References to sections of Proposition 36 or Proposition 47 are to Penal Code sections enacted by the respective proposition.

of burglary tools with intent to break and enter in violation of section 466. The evidence at trial showed that in July 2004, deputies from the Orange County Sheriff's Department were dispatched to a residential neighborhood where they encountered Guzman walking toward a parked blue Toyota 4Runner. The deputies conducted a patdown search of Guzman and found items commonly used as burglary tools in his pockets, including a flathead screwdriver, a long flashlight, two AA batteries, and work gloves. The deputies also searched the Toyota 4Runner that Guzman had been driving, and found, inter alia, 27 pieces of jewelry that had been stolen two or three days earlier from a residence about a mile away from their encounter with Guzman. The Toyota 4Runner also contained a flashlight, several screwdrivers, a cell phone, a knife with a four- or five-inch blade, a two-way radio charger, and a pair of binoculars.

In a bifurcated proceeding, the jury found true enhancement allegations that Guzman had suffered five prior strike convictions within the meanings of sections 667, subdivisions (d) and (e)(2)(A), and 1170.12, subdivisions (b) and (c)(2)(A), and had served a prior prison term within the meaning of section 667.5, subdivision (b). The five prior strike convictions were for residential burglaries. The trial court denied Guzman's motion to strike his prior strike convictions. The court sentenced Guzman to state prison for a term of 25 years to life on the receipt of stolen property count and stayed execution of sentence on the possession of burglary tools count.

Guzman appealed from the judgment of conviction. He argued the trial court erred by denying his pretrial motion to suppress evidence and abused its discretion by deciding not to strike Guzman's prior strikes under section 1385. A panel of this court affirmed the judgment of conviction in *People v. Guzman* (Oct. 31, 2006, G036692) (nonpub. opn.).

In December 2012, Guzman filed a petition for recall of sentence under section 1170.126 of Proposition 36 (the petition). In the petition, Guzman asserted he was eligible for resentencing because he was convicted of offenses that were not

3

enumerated in section 667, subdivision (e)(2)(C)(i)-(iv). He requested that the trial court resentence him to a prison term of 44 months and order his immediate release, given he had already served 101 months in actual custody. The district attorney opposed the petition on the ground Guzman posed an unreasonable risk of danger to public safety.

The trial judge who imposed Guzman's prison sentence also conducted the hearing on the petition. The court denied the petition on the ground Guzman posed an unreasonable risk of danger to public safety.

Guzman filed an appeal from the order denying the petition.

## DISCUSSION

Guzman contends the trial court abused its discretion by denying the petition under Proposition 36 because the court found that Guzman posed an unreasonable risk of danger to public safety under section 1170.126, subdivision (f). In supplemental briefing invited by this court as to the applicability of Proposition 47 to this appeal, Guzman contends the definition of the phrase "'unreasonable risk of danger to public safety,'" set forth in Proposition 47 at section 1170.18, subdivision (c), applies to the petition. Guzman's contentions on both points are without merit.

### I.

#### STANDARDS FOR INTERPRETATION OF VOTER INITIATIVES

"'In interpreting a voter initiative . . . we apply the same principles that govern statutory construction. [Citation.] Thus, "we turn first to the language of the statute, giving the words their ordinary meaning." [Citation.] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.] In other words, 'our

4

primary purpose is to ascertain and effectuate the intent of the voters who passed the initiative measure.'" (*People v. Briceno* (2004) 34 Cal.4th 451, 459.)

II.

PROPOSITION 47 DOES NOT APPLY TO PETITIONS BROUGHT
UNDER PROPOSITION 36.

On November 6, 2012, California voters approved Proposition 36. (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1285.) "Under the three strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) as it existed prior to Proposition 36, a defendant convicted of two prior serious or violent felonies would be subject to a sentence of 25 years to life upon conviction of a third felony. Under [Proposition 36], however, a defendant convicted of two prior serious or violent felonies is subject to the 25-year-to-life sentence only if the third felony is *itself* a serious or violent felony. If the third felony is not a serious or violent felony, the defendant will receive a sentence as though the defendant had only one prior serious or violent felony conviction, and is therefore a second strike, rather than a third strike, offender. [Proposition 36] also provides a means whereby prisoners currently serving sentences of 25 years to life for a third felony conviction which was not a serious or violent felony may seek court review of their indeterminate sentences and, under certain circumstances, obtain resentencing as if they had only one prior serious or violent felony conviction. According to the specific language of [Proposition 36], however, a current inmate is not entitled to resentencing if it would pose an unreasonable risk of danger to public safety." (*Id.* at. pp. 1285-1286, fn. omitted.)

Section 1170.126, subdivision (f) (of Proposition 36) provides: "Upon receiving a petition for recall of sentence under this section, the court shall determine whether the petitioner satisfies the criteria in subdivision (e). If the petitioner satisfies the criteria in subdivision (e), the petitioner shall be resentenced pursuant to paragraph (1) of subdivision (e) of Section 667 and paragraph (1) of subdivision (c) of Section 1170.12

5

*unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.*"  (Italics added.)

Proposition 36 does not define the phrase "an unreasonable risk of danger to public safety."  By its terms, Proposition 36 provides the trial court with "discretion" to determine whether the test is satisfied.  While this appeal has been pending, in November 2014, California voters approved Proposition 47, which included a new resentencing provision under which a person serving a prison term for one or more statutorily specified crimes may petition the court for a recall of sentence and a reduction of certain felony convictions to misdemeanors unless such a reduction would "result in an unreasonable risk of danger to public safety" (§ 1170.18, subd. (b)(3)).[2]  Section 1170.18, subdivision (c) provides that "'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."[3]

Guzman argues Proposition 47's definition of "unreasonable risk of danger to public safety" applies to petitions filed under Proposition 36.  Based on our review of Proposition 36 and Proposition 47, read together, in light of the standards of interpretation of voter initiatives set forth by the California Supreme Court discussed *ante*, we conclude Proposition 47's definition does not apply to the petition.

---

[2] Proposition 47 was passed by California voters on November 4, 2014, effective November 5, 2014.  (See Cal. Const., art. II, § 10, subd. (a) ["An initiative statute or referendum approved by a majority of votes thereon takes effect the day after the election unless the measure provides otherwise."].)

[3] The violent felony offenses identified in section 667, subdivision (e)(2)(C)(iv) include sexually violent offenses as defined in section 6600 of the Welfare and Institutions Code; certain sexual offenses against children including oral copulation, sodomy, sexual penetration, and lewd or lascivious conduct; homicide offenses; solicitation to commit murder; assault with a machine gun on a peace officer or firefighter; possession of a weapon of mass destruction; and "[a]ny serious and/or violent felony offense punishable in California by life imprisonment or death" (§ 667, subd. (e)(2)(C)(iv)(VIII)).

6

Under Proposition 47, an "'unreasonable risk of danger to public safety'" in section 1170.18, subdivision (c) is an unreasonable risk that *the petitioner* will commit a statutorily specified new violent felony. Subdivision (a) of section 1170.18 sets forth the eligibility requirements for filing a petition under Proposition 47. The only petition referred to in section 1170.18 is one filed under section 1170.18, subdivision (a); there is no reference to any other kind of petition, much less a petition filed under Proposition 36. Thus, the plain words of section 1170.18 show the definition of "'unreasonable risk of danger to public safety,'" as set forth in section 1170.18, subdivision (c), applies only to petitions filed under section 1170.18, subdivision (a).

Such an interpretation is supported by reading Proposition 36 and Proposition 47, each as a whole and in context. Each proposition creates a resentencing scheme, but each scheme addresses very different concerns impacting distinct categories of crimes, perpetrators, and victims. Proposition 36 focuses on providing an opportunity for the resentencing of certain convicted felons who are serving indeterminate prison terms under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12; see *People v. Carmony* (2004) 33 Cal.4th 367, 371). Thus, those felons have necessarily committed serious and/or violent crimes, but their third strike conviction was for neither a serious nor a violent felony and who may not now pose an unreasonable risk of danger to public safety. (§ 1170.126, subds. (a)-(f).) Proposition 36 vests the trial court with discretion to determine the eligibility for such relief. (§ 1170.126, subds. (f), (g).)

In contrast, Proposition 47 provides for resentencing in the much less serious context of certain drug- and theft-related offenses that previously were felonies or "'wobblers'" but are now misdemeanors, unless the defendant is ineligible for such resentencing because he or she had been previously convicted of a statutorily enumerated crime, such as murder, rape, or child abuse. (§ 1170.18, subds. (a), (i).)

In comparing the population of felons eligible for resentencing consideration under the different propositions, there is a distinct difference between the

7

Proposition 36 group and the Proposition 47 group.  For Proposition 36 to come into play, the felon necessarily is a third striker.  Third strikers are a riskier and more volatile group of felons than the group of felons to which Proposition 47 applies.

With the exception of one clause in section 1170.18, subdivision (c), nothing in Proposition 47 suggests even an indirect application of any of its provisions to Proposition 36.  Guzman argues the clause preceding the definition of the phrase "'unreasonable risk of danger to public safety'" in Proposition 47's section 1170.18, subdivision (c), supports its application to Proposition 36 because it states that definition applies as the phrase is "used throughout this Code."

Although the phrase, "[a]s used throughout this Code," in section 1170.18, subdivision (c) unambiguously refers to the Penal Code, and not merely section 1170.18 or the other provisions contained in Proposition 47, it does not necessarily follow that the definition contained in section 1170.18, subdivision (c) must be read into section 1170.126, subdivision (f).  Under the governing principles of statutory interpretation, we cannot read this phrase in isolation; instead, we must consider Proposition 47 and Proposition 36 as a whole and in context.  And, as discussed *ante*, the definition is expressly limited to whether a petitioner (a person filing a petition under Proposition 47) posed an unreasonable risk of danger to public safety.

The statutes must be read as a whole and in context with the statutory schemes.  Therefore, even if section 1170.18, subdivision (c)'s definition of "'unreasonable risk of danger to public safety'" could arguably apply to petitions brought under Proposition 36, any argument favoring such an application would be far outbalanced by the significant disparity between Proposition 36 and Proposition 47.  They are disparate in terms of the crimes to which they pertain and their respective purposes, and the serious consequences at stake, namely, a significant reduction of the trial court's discretion to deny third strikers' petitions brought under Proposition 36.

8

In addition, even if Proposition 47's reference to the definition's use throughout the code creates an ambiguity in the propositions when read as a whole, we would rely on extrinsic aids to ascertain the *voters'* intent. (See *People v. Rizo* (2000) 22 Cal.4th 681, 685.) Our analysis of these extrinsic aids confirms our holding that Proposition 47 does not apply to petitions under Proposition 36.

The Proposition 47 ballot materials do not refer to Proposition 36, much less analyze any effect Proposition 47 might have on serious and/or violent recidivist felons who have been convicted and sentenced under the Three Strikes law and seek resentencing. Consequently, the voters had no notice (or even a hint) that Proposition 47 would be applied in any way that would affect petitioners under Proposition 36, and nothing otherwise suggests the voters so intended such an application. Furthermore, it is notable that the phrase "'unreasonable risk of danger to public safety'" appears in only one other place in the Penal Code—in Proposition 36 itself—and yet the Proposition 47 ballot materials conspicuously omit any reference to Proposition 36. It is unreasonable for us to assume the voters in passing the initiative—despite complete silence on the issue—meant to lump both groups of felons together and subject the third strikers covered by Proposition 36 to a lower standard of dangerousness than already exists under Proposition 36. Nor was there any notice to the voters that the judicial discretion permitted by Proposition 36 would be drastically reduced by Proposition 47.

We therefore hold that section 1170.18, subdivision (c)'s definition does not apply to petitions for resentencing under Proposition 36. Our conclusion "is more faithful to the overarching purpose[s]" of Proposition 36 and Proposition 47. (*People v. Rizo*, *supra*, 22 Cal.4th at p. 687.) Consequently, we do not reach Guzman's argument that section 1170.18, subdivision (c) of Proposition 47 retroactively applies to Proposition 36.

Our holding is consistent with the holding of the appellate court in *Davis*, *supra*, 234 Cal.App.4th 1001. Rejecting the conclusion "the drafters of Proposition 47,

9

or the electorate that approved it, intended it to rework the procedures established only two years before to deal with resentencing Three Strikes offenders" (*id.* at p. 1022), the *Davis* court held, "the five words 'As used throughout this Code' [citation] were not intended by the voters to hamstring the Three Strikes Reform Act [(Proposition 36)]" (*id.* at p. 1026). The court stated the "literal application of Proposition 47's definition of 'unreasonable risk of danger to public safety' would no longer allow a court to consider the galaxy of factors, including, for example, the 'suitability' and 'unsuitability' factors used by the Board of Parole Hearings" in ruling on Proposition 36 petitions. (*Id.* at p. 1023.) The *Davis* court added: "And, one must wonder, what would be left of that provision in section 1170.126 [of Proposition 36] expressly granting the court the power to rely on '*Any other evidence the court, within its discretion, determines to be relevant* in deciding whether a new sentence would result in an unreasonable risk of danger to public safety.'" (*Id.* at pp. 1023-1024.) The *Davis* court explained that the importation of Proposition 47's definition into Proposition 36 "would eviscerate [section 1170.126, subdivision (g)(3)], as a court would be restricted to weighing *only* the likelihood that the petitioner if released would commit one of the offenses specified in clause (iv) of section 667, subdivision (e)(2)(C) [(Proposition 47)]." (*Davis*, *supra*, at p. 1024.)

Nothing in this opinion precludes Guzman from filing the appropriate petition under Proposition 47, if applicable, in which case the trial court must decide, in the first instance, the threshold question whether he is eligible for resentencing under Proposition 47.

## III.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING THE PETITION UNDER PROPOSITION 36.

As Guzman was sentenced to a 25-year-to-life prison term under the Three Strikes law after his conviction of felony receipt of stolen goods in violation of section 496, subdivision (a), it is undisputed that Guzman's conviction met the eligibility

10

requirements for consideration of a recall of sentence under section 1170.126, subdivision (e) of Proposition 36.[4] Guzman contends the trial court abused its discretion by denying the petition under section 1170.126, subdivision (f).

"'The abuse of discretion standard is used in many other contexts and reflects the trial court's superior ability to consider and weigh the myriad factors that are relevant to the decision at hand. A trial court will not be found to have abused its discretion unless it "exercised its discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice." [Citation.]' [Citation.]" (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1180.)

Subdivision (g) of section 1170.126 (of Proposition 36) provides: "In exercising its discretion in subdivision (f), the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." The prosecution bears the burden of demonstrating that an

---

[4] Section 1170.126, subdivision (e) provides: "An inmate is eligible for resentencing if: [¶] (1) The inmate is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7. [¶] (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12. [¶] (3) The inmate has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12."

11

otherwise eligible petitioner poses an unreasonable risk of danger to public safety. (See *People v. Superior Court (Kaulick)*, *supra*, 215 Cal.App.4th at p. 1305.)

The trial court denied the petition in a minute order, explaining its ruling as follows:

" . . . The single issue before the Court, as agreed to by both the Petitioner and Respondent is whether the Respondent has met its burden by a preponderance of the evidence that the Petitioner poses an unreasonable risk to public safety.

"The Petitioner has engaged in substantially disciplinary free conduct since being incarcerated in 2004 for the commitment crimes. Furthermore, no information was presented to the Court that the Petitioner has committed any direct acts of violence upon any victims.

"However, public safety includes being free from the commission of property crimes. See *People v. Nasa[l]ga* (1996) 12 C[al.]4th 784, 790 ('the Legislature believes that it is in the best interest for Public Safety to enhance the penalties for the crimes of vehicle theft and receiving stolen property.'). The Petitioner's disposition to commit such crimes when he is not incarcerated is so apparent from the record before the Court. After being deported no less than three times from 1977 through 1980, the Petitioner reentered the United States and committed five separate residential burglaries in 1985. He was discharged from parole for those crimes in 1990. In 1995 Petitioner was convicted of conspiracy to transport a substantial amount (20 pounds) of methamphetamine. While on supervised release for that conviction, he committed the crimes of receiving stolen property and possession of burglary tools in 2004, which are the commitment crimes.

"This Court is convinced by a preponderance of the evidence that the Petitioner [poses] an unreasonable risk to public safety. If he is released he will find his way into the community and continue to commit property crimes. Thus, the Petition is DENIED." (Italics added.)

12

Guzman does not argue that any of the trial court's stated findings was unsupported by the record. Instead, he argues that by denying the petition, the court "contradicted the spirit and purpose of the law." Guzman further argues: "The reasoning would essentially make any eligible petitioner an unreasonable risk of danger to society. The law presupposes that the people to whom it applies, will all have multiple serious and/or violent offenses in their background. At a minimum, every petitioner would have two such crimes to even qualify for the law. The court denied resentencing because the appellant suffered the prior convictions that the law recognizes as necessary for the statute's application. Denials of this sort would hinder the reduction of overcrowding, would not save money and would not 'make the punishment fit the crime.' Rather, very few people would be released and the law would serve little to no purpose."

As demonstrated by the trial court's minute order, quoted *ante*, the court's ruling was based on Guzman's lengthy history of committing multiple crimes when free from custody, including *five* counts of residential burglary and one count of conspiracy to transport a substantial amount of methamphetamine; Guzman was on supervised release for the latter offense when he committed the instant offenses, which involved, inter alia, being found in possession of 27 pieces of jewelry that had been stolen from a nearby residence and items commonly used as burglary tools, including a flashlight, several screwdrivers, a pair of binoculars, and a knife with a four- or five-inch blade. The trial court expressly stated it had reviewed all the court records in the matter, including a forensic psychological evaluation of Guzman, showing he posed a low to medium risk of recidivism.

We acknowledge the record does not show Guzman engaged in violent conduct or that any of the prior residential burglary offenses were committed at a time when the residence was occupied. Section 1170.126, however, does not require the recall of a sentence unless the petitioner had engaged in violent conduct. Instead, it provides that a petition to recall a sentence must be granted to an eligible petitioner if, in the trial

13

court's discretion, the petitioner does not pose an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f).) The trial judge, who denied the petition, had also presided at Guzman's jury trial and imposed Guzman's sentence. The trial court, therefore, had "'superior ability to consider and weigh the myriad factors that [we]re relevant'" in determining whether Guzman posed an unreasonable risk of danger to public safety. (*People v. Hajek and Vo*, *supra*, 58 Cal.4th at p. 1180.) Given Guzman's long and undisputed record of criminality, the trial court did not abuse its discretion by concluding that Guzman posed an unreasonable risk of danger to public safety within the meaning of Proposition 36, and denying the petition.

## DISPOSITION

The postjudgment order is affirmed without prejudice to Guzman petitioning for relief from the trial court under section 1170.18.

FYBEL, J.

I CONCUR:

O'LEARY, P. J.

14

ARONSON, J., Concurring:

In Proposition 47, the "Safe Neighborhoods and Schools Act," the voters defined the phrase "unreasonable risk of danger to public safety," as it is "used throughout this Code," to mean an unreasonable risk of committing certain enumerated felonies designated as the most violent and serious offenses. This is a straightforward command. Proposition 47's definition applies wherever the phrase "unreasonable risk of danger to public safety" appears in the Penal Code. The identical phrase is found in Proposition 36, the "Three Strikes Reform Act of 2012." It therefore logically follows Proposition 47's definition applies to Proposition 36. Indeed, it is beyond coincidence that the only other Penal Code section to contain the phrase "unreasonable risk of danger to public safety" is found in Proposition 36.

The majority concedes Proposition 47's command is unambiguous, but nevertheless surmises Proposition 47's definition of a particular phrase as it is "used throughout this Code" does not mean it should be used throughout the Code. According to the majority, Proposition 47's enactors could not have intended to apply Proposition 47's definition of risk to Proposition 36 because the general purposes of the two propositions are incompatible. But the majority does not discuss either proposition's enumerated purposes or explain how applying Proposition 47's definition of risk to Proposition 36 conflicts with or frustrates its purpose. Indeed, although examining the purpose of a statute or initiative may be necessary to resolve an ambiguity, avoid an absurd consequence, or avoid a result that would patently frustrate the intent of the law, none of these criteria are present here and the majority offers no convincing reason not to follow Proposition 47's unambiguous directive.

In adding section 1170.18, subdivision (c), to the Penal Code, Proposition 47 meant exactly what it says—its definition of the phrase "unreasonable risk of danger to public safety" applies "throughout" the Penal Code, including the provisions

1

Proposition 36 earlier added to that code. There is no alternative meaning to this mandate, and the majority offers none. The majority simply reads this directive out of the initiative, rendering it a useless appendage without meaning. I write separately to voice my disagreement with this analysis.

I concur in the result, however, because nothing in Proposition 47, or any extrinsic evidence regarding its purpose and intent, overcomes the statutory presumption that amendments to the Penal Code only operate prospectively. The trial court decided Guzman's Proposition 36 resentencing petition before Proposition 47 passed and went into effect, and therefore Proposition 47's definition of the phrase "unreasonable risk of danger to public safety" does not apply retroactively to Guzman's petition. I also agree with the majority's conclusion the trial court did not abuse its discretion in denying Guzman's petition based on the court's finding he poses an "unreasonable risk of danger to public safety," as that phrase was defined when the court decided Guzman's petition.

I.    *Background on Proposition 36 and Proposition 47*

As originally adopted, the "Three Strikes" law (Penal Code, §§ 667, subds. (b)-(i), 1170.12; all statutory references are to the Penal Code unless otherwise stated) required a defendant with two prior serious or violent felony convictions to be sentenced to 25 years to life for any third felony conviction. When the voters passed Proposition 36 in November 2012, they changed the Three Strikes law so that "a defendant convicted of two prior serious or violent felonies is subject to the 25-year-to-life sentence only if the third felony is *itself* a serious or violent felony. If the third felony is not a serious or violent felony, the defendant will receive a sentence as though the defendant had only one prior serious or violent felony conviction, and is therefore a second strike, rather than a third strike, offender." (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1285-1286, original italics, footnote omitted (*Kaulick*).)

2

The defendant receives an enhanced sentence, but not an automatic 25-year-to-life sentence.  (§ 1170.126, subd. (f).)

Proposition 36 also created a postconviction procedure that allows an inmate to petition for resentencing if he or she was sentenced to 25 years to life based on a third strike that was neither a serious nor violent felony.  (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1292.)  An inmate is not eligible for resentencing under Proposition 36 if (1) the current sentence is for a serious drug offense, a felony sex offense requiring registration as a sex offender, or a felony involving a firearm, a deadly weapon, or the intent to cause great bodily injury; or (2) the inmate has been convicted of one of the felonies Proposition 36 designates as the most serious and violent offenses (hereinafter, Super Strike felonies).[1]  (§ 1170.126, subd. (e)(2) & (3).)  The trial court must grant an eligible inmate's resentencing petition "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f).)  In exercising that discretion, the trial court may consider the following factors:  "(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes;  [¶]  (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and  [¶]  (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (g).)

---

[1]    The Super Strike felonies are (a) a "'sexually violent offense'"; (b) oral copulation, sodomy, sexual penetration, or a lewd or lascivious act involving a child under 14 years of age; (c) any homicide offense, including any attempted homicide; (d) solicitation to commit murder; (e) assault with a machine gun on a peace officer or firefighter; (f) possession of a weapon of mass destruction; and (g) any serious or violent felony offense punishable in California by life imprisonment or death.  (§§ 667, subd. (e)(2)(C)(iv), 1170.12, subd. (c)(2)(C)(iv).)

3

In November 2014, the voters passed Proposition 47 to reduce the punishment for certain drug- and theft-related offenses by designating them as misdemeanors. Before Proposition 47, the same offenses were designated as felonies or "wobblers," which are crimes punishable as either felonies or misdemeanors depending on the underlying facts. (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091.) Similar to Proposition 36, Proposition 47 creates a postconviction procedure that allows an inmate to petition for resentencing if he or she is "currently serving" a felony sentence for a crime Proposition 47 now designates as a misdemeanor. (§ 1170.18, subd. (a); *Rivera*, at p. 1092.) If the petitioner satisfies Proposition 47's criteria, the petitioner's "felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b); *Rivera*, at p. 1092.) Proposition 47 uses the same standard as Proposition 36 for determining whether a person should be resentenced. Moreover, Proposition 47 identifies the identical three factors as Proposition 36 for the trial court to consider in making that determination. (Compare § 1170.18, subd. (b) and § 1170.126, subd. (g).)

Unlike Proposition 36, however, Proposition 47 defines the phrase "unreasonable risk of danger to public safety." Specifically, section 1170.18, subdivision (c), states, "*As used throughout this Code*, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c), italics added.) The "new violent felon[ies]" identified in section 1170.18, subdivision (c) are the identical Super Strike felonies that disqualify an inmate from resentencing under Proposition 36. (Compare § 1170.18, subd. (c) and § 1170.126, subd. (e)(3).)

4

II.  *Proposition 47's Definition of the Phrase "Unreasonable Risk of Danger to Public Safety" Applies "Throughout" the Penal Code*

Guzman contends Proposition 47's definition of the phrase "unreasonable risk of danger to public safety" applies to his Proposition 36 petition because Proposition 47's plain language declares the definition must be used "throughout this Code."[2]  I agree it applies, but not retroactively to Guzman's petition.

When interpreting voter initiatives like Proposition 47 and Proposition 36, we apply the same principles that govern statutory interpretation.  (*People v. Rizo* (2000) 22 Cal.4th 681, 685 (*Rizo*).)  Our task "'is to ascertain and effectuate legislative intent. [Citations.]' [Citation.]  In order to do so, '[w]e turn first to the words of the statute themselves, recognizing that "they generally provide the most reliable indicator of legislative intent." [Citations.]' [Citation.]"  (*People v. Leal* (2004) 33 Cal.4th 999, 1007 (*Leal*).)  We give the words their ordinary meaning, and construe them in the context of the statute as a whole and the overall statutory scheme.  (*Rizo*, at p. 685.)

"When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]"  (*Rizo*, *supra*, 22 Cal.4th at p. 685.)  But "'[w]hen "'statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.'" [Citations.]' [Citation.]"  (*Leal*, *supra*, 33 Cal.4th at p. 1008.)  Indeed, "'[a]bsent ambiguity, we presume that the voters intend the meaning apparent on the face of an initiative measure [citation] and the court may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language.' [Citation.]"  (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301.)

---

[2]  As the majority notes, this issue currently is pending in the Supreme Court. (*People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Feb. 18, 2015, S223825.)

"'It is our task to construe, not to amend, the statute. "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted. . . ." [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' [Citation.]" (*Leal*, *supra*, 33 Cal.4th at p. 1008.)

Here, Proposition 47's definition of the phrase "unreasonable risk of danger to public safety" is set forth in section 1170.18, subdivision (c), and that subdivision unambiguously declares the definition applies "throughout this Code." Accordingly, section 1170.18, subdivision (c)'s plain language makes the definition applicable to the entire Penal Code, including those provisions previously added by Proposition 36. Similar language has been construed to unambiguously refer to the entire code of which it is a part. For example, in *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, the court considered a provision in the Public Contract Code defining the term "emergency" "as used in this code." (*Marshall*, at p. 1255, italics omitted.) The *Marshall* court concluded, "There is nothing ambiguous about the phrase 'as used in this code.' In enacting [this] section . . . , the Legislature did not merely define the term 'emergency' for a particular chapter, article or division of the Public Contract Code—rather, it defined the term 'emergency' for the entire Public Contract Code. It logically follows the definition . . . must be read into [all other sections using that term]." (*Marshall*, at p. 1255.) Similarly, in *People v. Bucchierre* (1943) 57 Cal.App.2d 153, the Court of Appeal concluded, "The words 'as in this code provided' (Penal Code, § 182) refer to the Penal Code." (*Bucchierre*, at p. 166.)

Based on Proposition 47's plain language, the majority concedes "the phrase, '[a]s used throughout this Code,' in section 1170.18, subdivision (c), unambiguously refers to the Penal Code, and not merely section 1170.18 or the other

6

provisions contained in Proposition 47." (Maj. opn. *ante*, at p. 8.) The majority nonetheless refuses to apply Proposition 47's definition of the phrase "unreasonable risk of danger to public safety" to Proposition 36's use of that identical phrase. In doing so, the majority fails to offer an alternative interpretation of Proposition 47's command that its definition shall apply as the phrase is "used throughout this Code." Instead, the majority simply declines to follow the command, concluding Proposition 47's drafters and the voters who approved it could not have intended to apply the definition to Proposition 36 because Proposition 47's ballot pamphlet analysis and argument neither stated that intent nor referred to Proposition 36.[3] This approach fails for two reasons.

First, it does not give meaning to every word of Proposition 47. (*People v. Briceno* (2004) 34 Cal.4th 451, 465 ["courts are to give meaning to every word of an initiative if possible, and should avoid a construction making any word surplusage"].) The majority assigns no meaning to the phrase "as used throughout this Code," striking its application to the only other instance of the "unreasonable risk of danger to public safety" phase in the Penal Code. The majority's conclusion renders the phrase "as used throughout this Code" meaningless. But the enactors must have intended it to have the meaning it plainly carries if there is no other possible meaning. I can think of no alternative meaning, and the majority offers none.

---

[3]     The majority also concludes Proposition 47's definition of the phrase "unreasonable risk of danger to public safety" only applies to petitions filed under Proposition 47 because the definition refers to "the petitioner," and the only petitions referenced in Proposition 47 are those seeking relief under that same proposition. (Maj. opn. *ante*, at p. 7.) But it does not logically follow that Proposition 47's general definition of the risk to public safety, expressly applied "throughout this Code," does not apply "throughout this Code" because of Proposition 47's specific remedies. I fail to see how this circular argument allows the majority to disregard Proposition 47's plain language. Section 1170.18, subdivision (c) unambiguously states its definition of the phase applies "throughout this Code," not merely to petitions filed under Proposition 47.

7

Second, the majority's approach ignores that the ballot pamphlet analysis and arguments were not required to explain or expressly set forth the voters' intent to make the definition applicable to Proposition 36 because Proposition 47's plain language unambiguously declared the voters' intent to apply the definition to the entire Penal Code. (See *Leal*, *supra*, 33 Cal.4th at p. 1008.) When an initiative's plain language is clear and unambiguous, "[w]e presume that the voters intended the meaning apparent on the face of the measure and our inquiry ends." (*Woo v. Superior Court* (2000) 83 Cal.App.4th 967, 975 (*Woo*); see *Leal*, at p. 1008; *Jahr v. Casebeer* (1999) 70 Cal.App.4th 1250, 1254 [""If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent . . . of the voters . . . ." . . .""].)

The majority also refuses to apply the plain meaning of Proposition 47's language because it concludes there is a "significant disparity between Proposition 36 and Proposition 47 . . . in terms of the crimes to which they pertain and their respective purposes." (Maj. opn. *ante*, at p. 8.) Although there may be a difference in the nature of the principal crimes each proposition addresses—serious and violent felonies for Proposition 36 and drug- and theft-related crimes for Proposition 47—that difference in subject matter does not equate to a difference in purpose nor does it allow the court to disregard Proposition 47's plain meaning. We may disregard a statute's plain meaning only when that meaning is """"repugnant to the general purview of the act"""" (*Leal*, *supra*, 33 Cal.4th at p. 1008), or would lead to "absurd consequences" inconsistent with the legislation's intent (*In re Michele D.* (2002) 29 Cal.4th 600, 606; *Woo*, *supra*, 83 Cal.App.4th at p. 975). The majority, however, fails to identify either proposition's purpose or explain how applying Proposition 47's definition of the phrase "unreasonable risk of danger to public safety" to Proposition 36 is repugnant to Proposition 36's objective or would lead to an absurd consequence inconsistent with its underlying goals.

8

Proposition 36's declared purpose includes (1) "Restor[ing] the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime"; (2) "Sav[ing] hundreds of millions of taxpayer dollars every year . . . [by] no longer pay[ing] for housing or long-term health care for elderly, low-risk, non-violent inmates serving life sentences for minor crimes"; and (3) "Prevent[ing] the early release of dangerous criminals who are currently being released early because jails and prisons are overcrowded with low-risk, non-violent inmates serving life sentences for petty crimes."[4] (Prop. 36, § 1, approved Nov. 6, 2012, eff. Nov. 7, 2012.)

Proposition 47's declared purpose includes (1) "ensur[ing] that prison spending is focused on violent and serious offenses"; (2) "maximiz[ing] alternatives for nonserious, nonviolent crime"; and (3) "invest[ing] the savings generated from this act into prevention and support programs for K-12 schools, victim services, and mental health and drug treatment." (Prop. 47, § 2, approved Nov. 4, 2014, eff. Nov. 5, 2014; see *id*. at § 3.) The ballot argument in favor of Proposition 47 also explains the proposition (1) "Stops wasting prison space on petty crimes and focuses law enforcement resources on violent and serious crime by changing low-level nonviolent crimes such as simple drug possession and petty theft from felonies to misdemeanors"; (2) "Authorizes felonies for registered sex offenders and anyone with a prior conviction for rape, murder or child molestation"; and (3) "Stops wasting money on warehousing people in prisons for nonviolent petty crimes, saving hundreds of millions of taxpayer funds every year."

_____

[4] Additional declared purposes of Proposition 36 include (1) "Requir[ing] that murderers, rapists, and child molesters serve their full sentences—they will receive life sentences, even if they are convicted of a new minor third strike crime"; and (2) "Maintain[ing] that repeat offenders convicted of non-violent, non-serious crimes like shoplifting and simple drug possession will receive twice the normal sentence instead of a life sentence." (Prop. 36, § 1, approved Nov. 6, 2012, eff. Nov. 7, 2012.)

9

(Voter Information Guide, Gen. Elec. (Nov. 4, 2014) argument in favor of Prop. 47, p. 38.)

Proposition 36 and Proposition 47 therefore share the common purpose of reworking significant portions of California's statutory sentencing scheme to ensure prison resources are devoted to violent and serious offenders, and to ensure those who commit violent and serious offenses are not released early because of overcrowding. Both propositions accomplish this purpose by reducing the sentences for a wide variety of nonviolent and nonserious felonies. Both propositions also allow inmates serving a sentence they would not have received after the passage of Proposition 36 and Proposition 47 to petition for resentencing.

Applying Proposition 47's definition of the phrase "unreasonable risk of danger to public safety" to Proposition 36 furthers this common purpose by providing trial courts with the discretion to deny a Proposition 36 resentencing petition only for those inmates who pose an unreasonable risk of committing certain violent and serious offenses. Without the definition, the phrase has no fixed meaning in Proposition 36 and trial courts may deny a resentencing petition by a nonviolent offender without evaluating whether the petitioner poses a risk of committing a specific violent or serious felony. (*People v. Garcia* (2014) 230 Cal.App.4th 763, 769-770; *People v. Flores* (2014) 227 Cal.App.4th 1070, 1075.) But applying the definition to Proposition 36 requires the trial court to find an inmate poses an unreasonable risk of committing one of the most serious and violent felonies that both Proposition 36 and Proposition 47 identify, namely, the Super Strike felonies. The trial court still retains significant discretion to consider a wide variety of factors and evidence; the court merely is required to evaluate those factors and evidence in the context of determining whether the petitioner poses an unreasonable risk of committing one of these aggravated felonies.

10

In considering the impact Proposition 47's definition has on Proposition 36, it warrants emphasizing who is eligible to apply for resentencing under Proposition 36. To be eligible, (1) an inmate must be serving an indeterminate life sentence for committing a nonviolent, nonserious felony; (2) the felony for which the inmate was sentenced must not be a serious drug crime, a sex offense requiring registration as a sex offender, or any felony involving a firearm, a deadly weapon, or the intent to cause great bodily injury; and (3) the inmate must not have a prior conviction for any of the Super Strike felonies.  (§ 1170.126, subd. (e).)  These eligibility restrictions make the most serious and violent felons categorically ineligible for resentencing.  Consequently, the trial court is never faced with considering whether resentencing such felons would pose an unreasonable risk of danger to public safety.  I therefore fail to see how applying Proposition 47's definition to Proposition 36 is repugnant to the general purpose of Proposition 36 or Proposition 47, leads to absurd consequences, or frustrates the purpose behind either proposition.  Without reaching at least one of those conclusions, I cannot join the majority in disregarding Proposition 47's plain language.

The requirement courts must follow express unambiguous provisions unless it would lead to absurd consequences or clearly frustrate the legislative purpose exists to prevent courts from unintentionally interpreting a statute to say what the court believes it ought to say, rather than what it actually says.  (*California School Employees Assn. v. Governing Bd. of South Orange County Community College Dist.* (2004) 124 Cal.App.4th 574, 588.)  That risk is especially pertinent when voters have acted through the initiative process to adopt legislation.  Here, the voters passed Propositions 36 and 47 to recalibrate the balance between punishment and public safety. These issues touch on controversial and difficult policy decisions involving various penalogical theories, such as deterrence, proportionality, and incapacitation.  It is not for the courts to wade into that debate, however.  "Our role as a reviewing court is simply to

11

ascertain and give effect to the electorate's intent guided by the same well-settled principles we employ to give effect to the Legislature's intent when we review enactments by that body. [Citation.] We do not, of course, pass upon the """"wisdom, expediency, or policy"""" of enactments by the voters any more than we would enactments by the Legislature. [Citation.]" (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1043.) "Where the [voters] ha[ve] made a policy choice, using as here particularly clear and unambiguous language, we may not second-guess [their] determination." (*Joshua D. v. Superior Court* (2007) 157 Cal.App.4th 549, 565.)

The majority concludes Proposition 47's drafters could not have meant what they said when they declared the definition of the phrase "unreasonable risk of danger to public safety" applied "throughout" the Penal Code because "[t]hird strikers are a riskier and more volatile group of felons than the group of felons to which Proposition 47 applies." (Maj. opn. *ante*, p.8.) The majority apparently believes this distinction demonstrates why Proposition 47's drafters could not have intended to apply the definition of risk to Proposition 36 petitioners. This would be true for inmates who committed a Super Strike felony, but those offenders are ineligible for resentencing. Otherwise, the accuracy of the majority's vague, generalized pronouncement varies greatly from case to case. Guzman's profile illustrates the point. His criminal record shows numerous drug and property offenses, but as the trial court expressly found, Guzman had no record of violence. Guzman may be eligible for a sentence reduction under Proposition 47 because his third strike was receiving stolen property, an offense reduced to a misdemeanor under certain circumstances. Under the majority's analysis, Guzman is a "riskier and more volatile" felon when petitioning for relief under Proposition 36, but not when he petitions for relief under Proposition 47. That result is not consistent with the common purpose the two propositions share.

12

Finally, the majority notes its conclusion is consistent with the First Appellate District, Division Two's recent decision in *People v. Davis* (2015) 234 Cal.App.4th 1001, which concluded "the five words 'As used throughout this Code' (§ 1170.18, subd. (c)) were not intended by the voters to hamstring [Proposition 36]" (*Davis*, at p. 1026), and applying Proposition 47's definition to Proposition 36 would "eviscerate" the "provision in [Proposition 36] expressly granting the court the power to rely on 'Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety. (§ 1170.126, subd. (g)(3).)'" (*Davis*, at p. 1024, italics omitted.) I disagree with both of these conclusions.

Applying the definition would not "hamstring" Proposition 36 because doing so is consistent with Proposition 36's purpose. As explained above, Proposition 36 seeks to free up prison space for the most serious and violent felons by reducing the sentences for other felons. By focusing the trial court's discretion on only those inmates who pose an unreasonable risk of committing a Super Strike felony, the definition furthers Proposition 36's purposes. Likewise, applying Proposition 47's definition to Proposition 36 would not "eviscerate" the cited provision in Proposition 36, which allows the trial court to consider any evidence it deems relevant when determining whether resentencing an inmate would result in an unreasonable risk of danger to public safety. Applying Proposition 47's precise definition of what amounts to an unreasonable risk of danger to public safety to Proposition 36 does not limit what evidence the trial court may consider in making that determination. Indeed, despite including its definition of the phrase "unreasonable risk of danger to public safety," Proposition 47 also includes the exact same provision as Proposition 36 in allowing the trial court to consider any evidence it deems relevant in determining whether an offender poses an unreasonable risk

13

of danger to public safety.  (Compare, § 1170.126, subd. (g)(3) and § 1170.18, subd. (b)(3).)

III.  *Proposition 47's Definition Does Not Apply Retroactively to Guzman's Resentencing Petition*

Although I conclude Proposition 47's definition of the phrase "unreasonable risk of danger to public safety" applies to Proposition 36, it does not apply to Guzman's Proposition 36 resentencing petition because the trial court decided the petition before the voters passed Proposition 47.  Guzman contends Proposition 47's definition applies retroactively to his petition based on *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), and cases applying *Estrada*.  But the well-established rule is that statutes only apply prospectively, and *Estrada* merely recognized a limited exception for statutes that reduce the punishment for a particular crime.  Proposition 47's definition does not reduce the punishment for a particular crime, and therefore *Estrada* does not support retroactively applying the definition to Guzman's petition.[5]

"Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent.  When the Legislature has not made its intent on the matter clear with respect to a particular statute, the Legislature's generally applicable declaration in section 3 provides the default rule:  'No part of [the Penal Code] is retroactive, unless expressly so declared.'  We have described section 3, and its identical counterparts in other codes (e.g., Civ. Code, § 3; Code Civ. Proc., § 3), as codifying 'the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.'  [Citation.]

---

[5]    This issue currently is pending in the Supreme Court.  (*People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted Feb. 18, 2015, S223676.)

14

In applying this principle, we have been cautious not to infer retroactive intent from vague phrases and broad, general language in statutes. [Citations.] Consequently, '"a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective."' [Citations.]" (*People v. Brown* (2012) 54 Cal.4th 314, 319-320 (*Brown*).)

Estrada creates a "contextually specific qualification" to this ordinary rule of prospective application: "When the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*Brown*, *supra*, 54 Cal.4th at p. 323, fn. omitted.) *Estrada* explained the rationale for its rule as follows: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Estrada*, *supra*, 63 Cal.2d at p. 745.)

Estrada involved a statute that had been amended to reduce the minimum term for the crime of escape without force or violence. (*Estrada*, *supra*, 63 Cal.2d at pp. 743-744.) Based on the foregoing rationale, the Supreme Court concluded the

15

amended statute's reduced sentence applied to the defendant because the judgment against him was not yet final. (*Id*. at p. 751.)

In *Brown*, the Supreme Court recently revisited its *Estrada* decision, explaining *Estrada* "'should not be interpreted as modifying [section 3's] well-established, legislatively-mandated principle [that no statute applies retroactively unless expressly so declared].' [Citation.] Accordingly, *Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments. [¶] . . . The holding in *Estrada* was founded on the premise that '"[a] legislative mitigation of the penalty *for a particular crime* represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law"' [citation] and the corollary inference that the Legislature intended the lesser penalty to apply to crimes already committed." (*Brown*, *supra*, 54 Cal.4th at pp. 324-325, original italics, fn. omitted; see *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1209.)

*Brown* involved an amendment to the Penal Code that increased the rate at which a prisoner in local custody received credit against his or her sentence for good behavior. The Supreme Court concluded the amendment did not apply retroactively because it did not alter the penalty for a particular crime, but rather addressed "future conduct in a custodial setting by providing increased incentives for good behavior." (*Brown*, *supra*, 54 Cal.4th at p. 325, italics omitted.) In *Brown*, the defendant argued "the rule of *Estrada* [citation] should be understood to apply more broadly to any statute that reduces punishment in any manner," but the Supreme Court rejected that contention because "the argument does not in any event represent a logical extension of *Estrada*'s reasoning. . . . [T]he rule and logic of *Estrada* is specifically directed to a statute that

16

represents "'legislative mitigation of the *penalty for a particular crime*"' [citation] because such a law supports the inference that the Legislature would prefer to impose the new, shorter penalty rather than to "'satisfy a desire for vengeance'" [Citation.] The same logic does not inform our understanding of a law that rewards good behavior in prison." (*Ibid.*, original italics.)

Here, Guzman does not contend Proposition 47 or its ballot pamphlet refers to or even suggests an intent to retroactively apply the definition of the phrase "unreasonable risk of danger to public safety" to Proposition 36 resentencing petitions that a trial court has rejected. The presumption of prospective operation therefore governs unless Proposition 47's definition reduces the penalty for a particular crime and thereby gives rise to an inference the voters intended the reduced penalty to apply to crimes already committed. (*Brown*, *supra*, 54 Cal.4th at pp. 324-325.) True, Proposition 47 reduced the penalties for various drug and theft crimes. But the issue is not whether those reduced penalties apply retroactively. Proposition 47's definition of the phrase "unreasonable risk of danger to public safety" must itself reduce the penalty for a particular crime because that is the provision Guzman seeks to apply retroactively.

Proposition 47's definition, however, does not reduce the sentence for any particular crime. Instead, the definition merely narrows the broad discretion Proposition 36 confers on the trial court in deciding whether to resentence an inmate who already has received an indeterminate life sentence for a nonviolent, nonserious, third strike offense. When the definition is applied to Proposition 36, the trial court still has considerable discretion to determine whether an inmate should be resentenced based on a number of factors related to the particular inmate, such as the inmate's criminal conviction history, the inmate's disciplinary and rehabilitation record, and any other evidence bearing on whether the inmate poses an unreasonable risk of committing a

17

Super Strike felony if he or she is resentenced. Not all inmates eligible for resentencing under Proposition 36 will be resentenced.

Without a reduction in the penalty for a particular crime, *Estrada* simply does not apply because there is nothing to support an inference the voters intended Proposition 47's definition of the phrase "unreasonable risk of danger to public safety" to apply retroactively. Applying the definition retroactively would require an extension of *Estrada* well beyond its rationale and limitations the Supreme Court explained in *Brown*. (*People v. Crockett* (2015) 234 Cal.App.4th 642, 660-661 [*Estrada* does not make Proposition 47's definition apply retroactively because the definition does not reduce a particular punishment for a particular crime].)

To support his contention to the contrary, Guzman relies on three cases that applied *Estrada's* rationale to conclude an amendment to the Penal Code applied retroactively. (See *People v. Nasalga* (1996) 12 Cal.4th 784; *People v. Vinson* (2011) 193 Cal.App.4th 1190; *People v. Figueroa* (1993) 20 Cal.App.4th 65.) Each of these cases, however, involved an amendment that directly reduced the penalty for the particular crime the defendant had committed, and therefore gave rise to *Estrada's* inference of retroactive application. In *Nasalga*, the amendment increased the property loss threshold for a two-year sentence enhancement on a grand theft conviction from $100,000 to $150,000, and therefore the defendant's conviction for stealing property valued at $124,000 no longer supported the two-year enhancement. (*Nasalga*, at p. 787.) In *Vinson*, the amendment increased the number of prior theft convictions for a sentence enhancement from one to three convictions, and therefore the defendant was no longer eligible for the enhancement because he did not have three prior convictions. (*Vinson*, at pp. 1193-1194, 1197.) In *Figueroa*, the amendment modified a sentence enhancement for selling drugs within 1,000 feet of a school to require a showing the school was in session or children were present, and therefore the defendant could not receive the

18

enhancement without evidence establishing this new element.  (*Figueroa*, at pp. 69-70.)
As explained above, Proposition 47's definition of the phrase "unreasonable risk of
danger to public safety" does not reduce the punishment for a particular crime, and
therefore these cases are inapposite.


ARONSON, J.

19